# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION


**Ohio Right to Life Society, Inc.,**

        **Plaintiff,**

-v-                                    **Case No.: 2:08-cv-00492**
                                             **JUDGE SMITH**
                                             **Magistrate Judge Deavers**

**Ohio Elections Commission,** *et al.*,

        **Defendants.**


### OPINION AND ORDER

      This matter is before the Court on Plaintiff Ohio Right to Life Society, Inc.'s Motion for a

Temporary Restraining Order and Preliminary Injunction (Doc. 70).  Plaintiff has also filed a

Motion to Advance a Trial on the Merits (Doc. 71).  An agreed Consent Decree has been filed

resolving some of the claims asserted by Plaintiff, however, there are remaining issues that must

be addressed.  Defendants have filed a response on those issues and this matter is ripe for review.

Both parties have agreed that there is no need for an evidentiary hearing.  Further, Defendants

have not opposed the consolidation of the preliminary injunction and final adjudication of these

issues.  Accordingly, Plaintiff's Motion to consolidate the preliminary injunction as to with a trial

on the merits, as to these issues, is **GRANTED**.  For the reasons that follow, Plaintiff's Motion

for a Temporary Restraining Order and Preliminary Injunction is **GRANTED IN PART AND**

**DENIED IN PART**.

## I.   BACKGROUND

Plaintiff Ohio Right to Life Society, Inc. ("Plaintiff" or "ORTL") is a non-profit

membership Ohio corporation, tax-exempt under Internal Revenue Code § 501(c)(4). (Am.

Compl. at ¶ 6).  ORTL has been active in Ohio in articulating pro-life positions, and the mission of

ORTL is to advance pro-life positions in Ohio legislation. (*Id*.).

On May 20, 2008, Plaintiff ORTL initiated this case, with a Complaint and a Motion for a

Temporary Restraining Order and Preliminary and Permanent Injunction against Defendants Ohio

Elections Commission ("OEC"), the individual Members of the OEC ("OEC Members"), and

Ohio Secretary of State Jennifer Brunner ("Secretary of State").  Plaintiff alleged that certain

provisions of Ohio campaign finance law violate its First Amendment rights of freedom of speech

and association.  Plaintiff sought to enjoin Defendants from enforcing these provisions in relation

to advertisements Plaintiff intended to run on broadcast media beginning in June 2008 through

December 2008.  On September 5, 2008, this Court granted in part and denied in part Plaintiff's

Motion for a Temporary Restraining Order.  Plaintiff's Motion was granted with respect to

Ohio's blackout provisions as applied to the two proposed broadcast ads Plaintiff wanted to run.

The Court ordered that Plaintiff could run the two ads attached to its Complaint during the thirty-

day period preceding the November 4, 2008 general election, and that Defendants were enjoined

from enforcing Ohio's blackout provision with regard to the two proposed ads.  Plaintiff's Motion

was denied with respect to all other claims.

In March 2010, Defendants filed a motion to dismiss, and in May 2010, Plaintiff filed a

motion to amend the Complaint in light of the United States Supreme Court decision, *Citizens*

*United v. FEC*, 558 U.S. \_\_\_\_, 130 S. Ct. 876 (2010).[1]  On August 16, 2010, the Court granted Plaintiff's Motion to Amend the Complaint and found Defendant's Motion to Dismiss moot in light of the Amended Complaint (Doc. 68).

Plaintiff filed its Amended Verified Complaint on August 24, 2010, and a Motion for Temporary Restraining Order on August 26, 2010 (Docs. 69 and 70).  Plaintiff ORTL "plans to run independent "broadcast" ads beginning in June 2010 through December 2010–that would address pro-life concerns, and, potentially advise potential voters to either "vote for" or "vote against" particular candidates."  (Am. Compl. at ¶ 9).  The issues concerning Plaintiff ORTL "include the impact of the recent federal health reform legislation on the payment for abortions utilizing taxpayer funds at either the state or federal levels."  (*Id*. at ¶ 8).

Plaintiff ORTL believes that the proposed broadcast ads that mention candidates for political offices in Ohio are in violation of Ohio election laws and fear that running the ads within 30 days of an election will subject it to extraordinary civil penalties and criminal prosecution.  (*Id*. at ¶ 10-13).  In addition, Plaintiff believes its planned speech would trigger various reporting and disclosure requirements, a regulatory burden which would "hamper[] its ability to raise money for

---

[1] *Citizens United* involved a nonprofit corporation that in January 2008 produced a film that was highly critical of then-Senator Hillary Clinton, a candidate in the Democratic Party's 2008 Presidential elections.  The film was, "in essence, . . . a feature-length negative advertisement that urges viewers to vote against Senator Clinton for President."  *Citizens United*, 130 S. Ct. at 890. As such, the firm was subject to the restrictions of 2 U.S.C. § 441b.  That provision made it unlawful for any corporation or union to use general treasury funds to make independent expenditures as defined by 2 U.S.C. § 431(17) or expenditures for speech defined as "electioneering communications," which are certain types of political ads aired shortly before an election or primary, 2 U.S.C. § 434(f)(3).  The Supreme Court declared this expenditure ban unconstitutional, holding that corporations may not be prohibited from spending money for express political advocacy when those expenditures are independent from candidates and uncoordinated with their campaigns.  130 S. Ct. at 913.

any proposed ad . . . ." (*Id.* at 10).  Consequently, Plaintiff ORTL has filed an amended complaint

and a motion for a temporary restraining order and preliminary injunction seeking to enjoin

Defendants from enforcing those provisions of Ohio campaign finance law regarding

"electioneering communications" that it contends violate its First Amendment rights of freedom of

speech and association.

A.      **The Challenged Ohio Revised Code Provisions**

        The provisions of Ohio law challenged by Plaintiff ORTL were part of the campaign

finance reforms enacted in Amended Substitute House Bill Number 1 ("H.B. 1") in December

2004 during a special session of the 125th Ohio General Assembly.  H.B. 1 became effective on

March 30, 2005.  Specifically, Plaintiff challenges the provisions of O.R.C. § § 3517.01(B)(6),

3517.1011, and 3599.03, laws regulating "electioneering communication," and O.R.C. §§

3517.992 and 3599.03, the penalty sections.

        Ohio Revised Code § 3517.1011(A)(7)(a) defines "electioneering communication" as:

         . . . any broadcast, cable or satellite communication that refers to a clearly
        identified candidate and that is made during either of the following periods of time:

        (i)      If the person becomes a candidate before the day of the primary election at
                 which candidates will be nominated for election to that office, between the
                 date that the person becomes a candidate and the thirtieth day prior to that
                 primary election, and between the date of the primary election and the
                 thirtieth day prior to the general election at which a candidate will be
                 elected to that office;

        (ii)     If the person becomes a candidate after the day of the primary election at
                 which candidates were nominated for election to that office, between the
                 date of the primary election and the thirtieth day prior to the general
                 election at which a candidate will be elected to that office.

        Thus, by definition, an electioneering communication in Ohio does not include any

broadcast communication that refers to a candidate during the thirty days before a primary or general election.  *See* Ohio Rev. Code § 3517.1011(A)(7)(b)(iii).  Such broadcast communications made during the thirty days before an election are separately defined as "expenditures."  *See* Ohio Rev. Code §3517.01(B)(6).

Ohio Revised Code § 3517.01(B)(6) defines "Expenditure," as any spending "for the purpose of influencing the results of an election . . . ." The provision further provides:

> During the thirty days preceding a primary or general election, any disbursement to pay the direct costs of producing or airing a broadcast, cable, or satellite communication that refers to a clearly identified candidate shall be considered to be made for the purpose of influencing the results of that election and shall be reported as an expenditure or as an independent expenditure under section 3517.10 or 3517.105 of the Revised Code, as applicable, except that the information required to be reported regarding contributors for those expenditures or independent expenditures shall be the same as the information required to be reported under divisions (D)(1) and (2) of section 3517.1011 of the Revised Code.

O.R.C. § 3517.1011(H), Ohio's "blackout provision," prohibits the broadcasting of any communication that refers to a clearly identified candidate during the 30 days preceding a general or primary election that is funded by contributions from a corporation or labor organization.  This provision provides:

> No person shall make, during the thirty days preceding a primary election or during the thirty days preceding a general election, any broadcast, cable, or satellite communication that refers to a clearly identified candidate using any contributions received from a corporation or labor organization.

Ohio's disclosure provision, O.R.C. § 3517.1011(D)(1)(a)-(f), requires any person who makes a disbursement in excess of $10,000 during any calendar year for the costs of producing and airing an "electioneering communication" to file a disclosure statement, within twenty-four hours of each disclosure date, containing the following:

-5-

(a)     the full name and address of the person making the disbursement, of any person sharing or exercising direction or control over the activities of the person making the disbursement, and of the custodian of the books and accounts of the person making the disbursement;

(b)     the principal place of business of the person making the disbursement, if not an individual;

(c)     the amount of each disbursement of more than one dollar during the period covered by the statement and the identity of the person to whom the disbursement was made;

(d)     the nominations or elections to which the electioneering communications pertain and the names, if known, of the candidates identified or to be identified,

(e)     if the disbursements were paid out of a segregated bank account that consists of funds contributed solely by individuals who are United States citizens or nationals or lawfully admitted for permanent residence as defined in section 101(a)(2) of the Immigration and Nationality Act directly to the account for electioneering communications, the information specified in division (D)(2) of this section for all contributors who contributed an aggregate amount of two hundred dollars or more to the segregated bank account and whose contributions were used for making the disbursement or disbursements required to be reported under division (D) of this section during the period covered by the statement.  Nothing in this division prohibits or shall be construed to prohibit the use of funds in such a segregated bank account for a purpose other than electioneering communications.

(f)     If the disbursements were paid out of funds not described in division (D)(1)(e) of this section, the information specified in division (D)(2) of this section for all contributors who contributed an aggregate amount of two hundred dollars or more to the person making the disbursement and whose contributions were used for making the disbursement or disbursements required to be reported under division (D) of this section during the period covered by the statement.

O.R.C. § 3517.1011(D)(1)(a)-(f).  For purposes of the disclosure requirement, "a person shall be considered to have made a disbursement if the person has entered into a contract to make the disbursement." O.R.C. § 3517.1011(B).

-6-

The provisions of Ohio Revised Code § 3599.03 broadly prohibit corporations and labor unions from using any treasury funds ". . . for or in aid of or opposition to a political party, a candidate for election or nomination to public office, a political action committee including a political action committee of the corporation or labor organization, a legislative campaign fund, or any organization that supports or opposes any such candidate, or for any partisan political purpose. . .."

**B.     Consent Decree and Remaining Issues**

Defendants admit, in their Answer, that *Citizens United,* 558 U.S. ___, 130 S. Ct. 876, precludes Defendants from enforcing Ohio Rev. Code §3599.03 to prevent corporations from making any corporate independent expenditures for political speech.  Further, the Ohio Elections Commission issued an Advisory Opinion on September 2, 2010, which states, in pertinent part:

> The Ohio Elections Commission will interpret and apply Ohio Revised Code §3517.105 and §3599.03 in light of the United States Supreme Court decision in Citizens United, and thus a corporation will be permitted to independently participate in partisan political activities, as long as such participation is independent of and not coordinated with any candidate or political party, and the corporation will not be subject to a finding of a violation by the Commission.

In light of the *Citizens United* case, the parties attempted to reach an agreement on Plaintiff's claims in this case and were able to agree to the following:

> When R.C. § 3517.1011(H) and R.C. § 3517.01(B)(6) are read together, the Court and parties agree that the statutes, are unconstitutional, to the extent that they prohibit a corporation from using its corporate treasury dollars, or a labor organization from using its treasury dollars to independently pay for any broadcast, cable, or satellite communication that refers to a "clearly identified candidate", as defined in R.C. § 3517.1011, during the thirty days preceding a primary election or thirty days preceding a general election.

The Court and the Parties agree that R.C. 3599.03(A) is unconstitutional to the extent that it prohibits a corporation or labor organization from using the corporation's money or property, or a labor organizations money or property, to make independent expenditures for or in aid of candidate elections in Ohio.

Based on the aforementioned agreement of the parties, a Consent Decree was entered by this Court on September 15, 2010, granting a preliminary and permanent injunction prohibiting Defendants from enforcing the statues as set forth above (*see* Doc. 79).

Pursuant to this Court's Scheduling Order, the parties have submitted a Joint Notice of Outstanding Issues (Doc. 78). The issues to be decided by this Court at this time are:

1.  Whether a question of Ohio law should be certified to the Ohio Supreme Court regarding the meaning of Section 7 of H.B. 1 of the 125th Ohio General Assembly, or is Section 7 clear on its face.

2.  Whether ORTL's claim that R.C. § 3599.03 is unconstitutional is moot.

3.  Whether the Court has jurisdiction to hear ORTL's claim concerning the validity and effect of Section 7 of H.B. 1 from the 125th Ohio General Assembly.

4.  Whether, assuming the Court has determined it has subject matter jurisdiction, the issues related to Section 7 of H.B. 1 from the Ohio General Assembly should be certified to the Ohio Supreme Court.

(*See* Doc. 78).

## II.    STANDARD OF REVIEW

Plaintiff ORTL moves this Court for a temporary restraining order and preliminary injunction pursuant to Rule 65(b) of the Federal Rules of Civil Procedure. Rule 65(b) permits a party to seek injunctive relief to prevent immediate and irreparable injury. A temporary

restraining order is an extraordinary remedy whose purpose is to preserve the status quo.  The

factors considered in granting a temporary restraining order or a preliminary injunction are similar

in nature.[2]  In the Sixth Circuit, it is well-settled that the following factors are to be considered in

determining whether a temporary restraining order is necessary:

> (1) whether the movant has a strong or substantial likelihood of success on the
> merits; (2) whether the movant would suffer irreparable injury without the relief
> requested; (3) whether issuance of the injunction will cause substantial harm to
> others; and (4) whether the public interest will be served by issuance of the
> injunction.

*Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir.

2004).  These four factors are "to be balanced, not prerequisites that must be met."  *Hamad v.*

*Woodcrest Condominium Assoc.*, 328 F.3d 224, 230 (6th Cir. 2003); *see also Capobianco, D.C. v.*

*Summers*, 377 F.3d 559, 561 (6th Cir. 2004).  Notwithstanding this balancing approach, the

likelihood of success and irreparable harm factors predominate the preliminary injunction inquiry.

The Sixth Circuit has noted, however, that "[i]n First Amendment cases, the first factor will often

be determinative." *Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville and*

*Davidson County, Tennessee*, 274 F.3d 377, 400 (6th Cir. 2001) (*citing Connection Distrib. Co.*

*v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).

### III.    DISCUSSION

There are four outstanding issues that have been fully briefed by the parties and ripe for

---

[2] The standard for a permanent injunction is "essentially the same" as the standard for a
preliminary objection with the exception that a plaintiff must demonstrate actual success on the
merits rather than a mere likelihood of success.  *Amoco Prod. Co. v. Village of Gambell*, 480
U.S. 531, 546 n.12 (1987) (*citing Univ. of Texas v. Camenisch*, 451 U.S. 390, 392 (1981)).

decision.[3]  The Court will first address any jurisdiction issues raised by Defendants.  If the Court

finds that is has jurisdiction over Plaintiff's claims, then it will turn to the certification issue, and

finally, will address any remaining substantive claims.

## A.      JURISDICTION OVER APPLICATION OF SECTION 7 OF H.B. 1

Plaintiff ORTL seeks a declaration that the disclosure and disclaimer provisions at issue

here, Ohio Revised Code § 3517.1011(A)-(F), are invalid by operation of Ohio law, and that

Defendants should be enjoined from enforcing these provisions on this basis.  Plaintiff asserts that

because *Citizens United* invalidates Ohio Revised Code § 3517.1011(H) and § 3517.01(B)(6),

that Section 7 of H.B. 1 operates to invalidate "all" provisions in § 3517.1011, including the

disclosure and disclaimer provisions in subsections (A) through (F).  (Pl.'s Mot. at 16-17).  With

respect to Plaintiff's Motion for Temporary Restraining Order and the issues before the Court at

this time, Plaintiff is not seeking a declaration that the disclosure and disclaimer provisions are

unconstitutional or that they otherwise violate federal law.  Therefore, in substance, Plaintiff

asserts that enforcement or application of the disclosure and disclaimer provisions would violate

Ohio law insofar as Section 7 operates to invalidate these provisions.        Section 7 of H.B. 1

provides, in its entirety:

Section 7.  Notwithstanding any contrary provision of section 1.50 of the Revised Code:

(A)   If a court of competent jurisdiction holds the application to any person or circumstance of any provision of division (B)(6) of section 3517.01 of the Revised Code, as amended by this act, or of division (H) of section 3517.1011 of the Revised Code, as enacted by this act, pertaining to a broadcast, cable, or satellite communication that refers to a clearly identified candidate and that is made during

---

[3] There are four other issues that the parties have outlined, but have reserved for later determination by the Court.

the thirty days preceding a primary election or during the thirty days preceding a general election to be unconstitutional, then all provisions of this act pertaining to that subject matter are hereby deemed to be invalid and are severable from the remaining provisions of this act.  As used in this division, "broadcast, cable, or satellite communication" and "refers to a clearly identified candidate" have the same meanings as in section 3517.1011 of the Revised Code.

(B)   If a court of competent jurisdiction holds the application to any person or circumstance of any provision of section 3517.1011 of the Revised Code pertaining to electioneering communications that occur at least 30 days prior to a primary election or to a general election to be unconstitutional, then all of the provisions of that section and all related references to that section or to electioneering communications throughout the Revised Code are hereby declared to be invalid and severable from the remaining provisions of this act.  As used in this division, "electioneering communication" has the same meaning as in section 3517.1011 of the Revised Code.

Defendants present multiple arguments in opposition to Plaintiff's request for an injunction concerning the disclosure and disclaimer provisions.  Specifically, Defendants argue that Plaintiff has not properly asked for this relief in its Amended Complaint, that this Court lacks jurisdiction to address the issue, that even if the Court has jurisdiction the issue should be certified to the Ohio Supreme Court, and that Plaintiff's interpretation of Ohio law is incorrect.

Because it is dispositive, the Court will first address the issue of whether it has jurisdiction to grant the remedy requested by Plaintiff as it relates to the disclosure and disclaimer provisions. Under the Eleventh Amendment to the United States Constitution, federal courts lack jurisdiction to hear suits by private citizens against a State unless the State explicitly consents to the suit or unless Congress, pursuant to a valid exercise of power, indisputably consents its intent to abrogate state immunity.  *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). However, in *Ex parte Young*, the United States Supreme Court established an exception to Eleventh Amendment immunity for claims for injunctive relief against individual state officials in

-11-

their official capacities.  209 U.S. 123, 150-157 (1908).  In *Ex parte Young*, the Court held that a suit challenging the constitutionality of the state official's action in enforcing state law is not considered to be against the State, and therefore Eleventh Amendment immunity does not apply. *Id.* at 150-156.  Additionally, "[i]n order to qualify under *Ex parte Young*, such an action must seek prospective relief to end a continuing violation of federal law."  *Carten v. Kent State Univ.*, 282 F.3d 391, 395 (6th Cir. 2002).  Conversely, "[t]o the extent that [the plaintiff] seeks to sue state officials in a federal court for violating state law, such a suit is indeed barred."  *McNeilus Truck & Mfg., Inc. v. State of Ohio*, 226 F.3d 429, 438 (6th Cir. 2000) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 123 (1984) (observing that "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."); *see Ohio Republican Party v. Brunner*, 543 F.3d 357 (6th Cir. 2008) (noting that a court may not grant a TRO solely on the basis of state law).

        Here, Plaintiff seeks to enjoin Defendants from enforcing the disclosure and disclaimer provisions contained in Ohio Revised Code § 3517.1011(A)-(F) on the basis that such enforcement would violate Ohio law.  Plaintiff reasons that because Ohio Revised Code §§ 3517.1011(H) and 3517.06(B)(6) are unconstitutional (*see* Doc. 79), Section 7 of H.B. 1 operates to invalidate the disclosure and disclaimer provisions.  But Plaintiff does not seek to enjoin this enforcement on the basis of an alleged violation of the United States Constitution or other federal law.  Furthermore, contrary to Plaintiff's suggestion, Defendants' agreement that Ohio Revised Code §§ 3517.1011(H) and 3517.06(B)(6) are unconstitutional does not amount to some type of waiver of its Eleventh Amendment jurisdictional argument or an agreement to Plaintiff's contention that Section 7 operates to invalidate the disclosure and disclaimer

-12-

provisions.  In substance, Plaintiff's argument at this time is that application of the disclaimer and

disclosure provisions would violate Ohio law, not that the application of said provisions would

violate federal law.  As stated by Plaintiff, "the constitutionality of the disclaimer and disclosure

provisions of [Ohio Revised Code] § 3517.1011, under the First Amendment have been reserved

for future proceedings in this case."  (Doc. 82).  Thus, as it relates to the disclaimer and

disclosure provisions, Plaintiff's request for relief at this time is functionally based entirely on its

argument that application of these provisions would violate Ohio law.

    For these reasons, the Court finds that it lacks jurisdiction to enjoin Defendants from

enforcing the disclosure and disclaimer provisions at issue on the basis that such conduct would

violate Ohio law.  Because the Court finds that it lacks jurisdiction to grant the remedy sought by

Plaintiff as it relates to the disclosure and disclaimer provisions, it is unnecessary to address

Defendants other contentions as to why Plaintiff's motion on this issue should be denied.

## B.    OHIO REVISED CODE § 3599.03

    Plaintiff ORTL argues that Ohio Revised Code § 3599.03, which prohibits independent

political speech by corporations and labor organizations, is an extremely broad prohibition on the

use of "treasury" funds of these organizations to utter independent, political pronouncements,

under any circumstances.

    Ohio Revised Code § 3599.03 provides in its entirety:

    § 3599.03.  Limitations on use of corporate or union funds or property for political
    purposes

    (A)(1) Except to carry on activities specified in sections 3517.082 [3517.08.2] and
    3517.1011 [3517.10.11], division (A)(2) of section 3517.1012 [3517.10.12],
    division (B) of section 3517.1013 [3517.10.13], and section 3599.031 [3599.03.1]
    of the Revised Code and except as provided in divisions (D), (E), and (F) of this

section, no corporation, no nonprofit corporation, and no labor organization, directly or indirectly, shall pay or use, or offer, advise, consent, or agree to pay or use, the corporation's money or property, or the labor organization's money, including dues, initiation fees, or other assessments paid by members, or property, for or in aid of or opposition to a political party, a candidate for election or nomination to public office, a political action committee including a political action committee of the corporation or labor organization, a legislative campaign fund, or any organization that supports or opposes any such candidate, or for any partisan political purpose, shall violate any law requiring the filing of an affidavit or statement respecting such use of those funds, or shall pay or use the corporation's or labor organization's money for the expenses of a social fund-raising event for its political action committee if an employee's or labor organization member's right to attend such an event is predicated on the employee's or member's contribution to the corporation's or labor organization's political action committee.

(2) Whoever violates division (A)(1) of this section shall be fined not less than five hundred nor more than five thousand dollars.

(B)(1) No officer, stockholder, attorney, or agent of a corporation or nonprofit corporation, no member, including an officer, attorney, or agent, of a labor organization, and no candidate, political party official, or other individual shall knowingly aid, advise, solicit, or receive money or other property in violation of division (A)(1) of this section.

(2) Whoever violates division (B)(1) of this section shall be fined not more than one thousand dollars, or imprisoned not more than one year, or both.

(C) A corporation, a nonprofit corporation, or a labor organization may use its funds or property for or in aid of or opposition to a proposed or certified ballot issue. Such use of funds or property shall be reported on a form prescribed by the secretary of state. Reports of contributions in connection with statewide ballot issues shall be filed with the secretary of state. Reports of contributions in connection with local issues shall be filed with the board of elections of the most populous county of the district in which the issue is submitted or to be submitted to the electors. Reports made pursuant to this division shall be filed by the times specified in divisions (A)(1) and (2) of section 3517.10 of the Revised Code.

(D)(1) Any gift made pursuant to section 3517.101 [3517.10.1] of the Revised Code does not constitute a violation of this section or of any other section of the Revised Code.

(2) Any gift made pursuant to division (A) (2) of section 3517.1012 [3517.10.12] of the Revised Code does not constitute a violation of this section.

-14-

(3) Any gift made pursuant to division (B) of section 3517.1013 [3517.10.13] of the Revised Code does not constitute a violation of this section.

(E) Any compensation or fees paid by a financial institution to a state political party for services rendered pursuant to division (B) of section 3517.19 of the Revised Code do not constitute a violation of this section or of any other section of the Revised Code.

(F)(1) The use by a nonprofit corporation of its money or property for communicating information for a purpose specified in division (A) of this section is not a violation of that division if the stockholders, members, donors, trustees, or officers of the nonprofit corporation are the predominant recipients of the communication.

(2) The placement of a campaign sign on the property of a corporation, nonprofit corporation, or labor organization is not a use of property in violation of division (A) of this section by that corporation, nonprofit corporation, or labor organization.

(3) The use by a corporation or labor organization of its money or property for communicating information for a purpose specified in division (A) of this section is not a violation of that division if it is not a communication made by mass broadcast such as radio or television or made by advertising in a newspaper of general circulation but is a communication sent exclusively to members, employees, officers, or trustees of that labor organization or shareholders, employees, officers, or directors of that corporation or to members of the immediate families of any such individuals or if the communication intended to be so sent exclusively is unintentionally sent as well to a de minimis number of other individuals.

(G) In addition to the laws listed in division (A) of section 4117.10 of the Revised Code that prevail over conflicting agreements between employee organizations and public employers, this section prevails over any conflicting provisions of agreements between labor organizations and public employers that are entered into on or after the effective date of this section pursuant to Chapter 4117. of the Revised Code.

(H) As used in this section, "labor organization" has the same meaning as in section 3517.01 of the Revised Code.

Basically, the aforementioned section prohibits a corporation (profit or non-profit) or

labor organization from using the corporation's money or property in connection with virtually

-15-

any aspect of a candidate election. The Federal counterpart to Ohio Revised Code § 3599.03, is 2 U.S.C. § 441b, which was ruled invalid in *Citizens United*, 130 S.Ct. at 898-899. The Supreme Court stated as follows:

> Section 441b's prohibition on corporate independent expenditures is thus a ban on speech. As a "restriction on the amount of money a person or group can spend on political communication during a campaign," that statute "necessarily reduces the quality of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached." *Buckley v. Valeo*, 424 U.S. 1, 19, 96 S. Ct. 612, 46 L. Ed. 2d 659 . . . (1976) (per curiam). Were the Court to uphold these restrictions, the Government could repress speech by silencing certain voices at any of the various points in the speech process. *See McConnell, supra*, at 251, 124 S.Ct. 619 (opinion of Scalia, J.) (Government could repress speech by "attacking all levels of the production and dissemination of ideas", for "effective public communication requires the speaker to make use of the services of others"). If § 441b applied to individuals, no one would believe that it is merely a time, place, or manner restriction on speech. Its purpose and effect are to silence entities whose voices the Government deems to be suspect.
>
> Speech is an essential mechanism of democracy, for it is the means to hold officials accountable to the people. *See Buckley, supra*, [424 U.S.] at 14-15, 96 S.Ct. 612, 46 L. Ed. 2d 659 ("In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential."). The right of citizens to inquire, to hear, to speak, and to use information to reach consensus is a precondition to enlightened self-government and a necessary means to protect it. The First Amendment "'has its fullest and most urgent application' to speech uttered during a campaign for political office." *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 223, 109 S. Ct. 1013, 103 L. Ed. 2d 271 . . . (1989) . . . .
>
>         \*     \*     \*
>
> For these reasons, political speech must prevail against laws that would suppress it, whether by design or inadvertence.
>
>         \*     \*     \*
>
> Premised on mistrust of governmental power, the First Amendment stands against attempts to disfavor certain subjects or viewpoints. Prohibited, too, are restrictions distinguishing among different speakers, allowing speech by some but not others. *See First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 784, 98 S. Ct. 1407, 55 L. Ed. 2d 707 . . . (1978). As instruments to censor, these categories are interrelated: Speech restrictions based on the identity of the speaker are all too often simply a

-16-

means to control content.

Quite apart from the purpose or effect of regulating content, moreover, the
Government may commit a constitutional wrong when by law it identifies certain
preferred speakers. By taking the right to speak from some and giving it to others,
the Government deprives the disadvantaged person or class of the right to use
speech to strive to establish worth, standing, and respect for the speaker's voice.
The Government may not by these means deprive the public of the right and
privilege to determine for itself what speech and [which] speakers are worthy of
consideration. The First Amendment protects speech and speaker, and the ideas
that flow from each.

* * * [I]t is inherent in the political process that voters must be free to obtain
information from diverse sources in order to determine how to cast their votes. At
least before *Austin*, the Court had not allowed the exclusion of a class of speakers
from the general public dialogue.

We find no basis for the proposition that, in the context of political speech, the
Government may impose restrictions on certain disfavored speakers. Both history
and logic lead us to this conclusion.  *    *    *

*Citizens United*, 130 S.Ct. at 898-99 (other internal citations omitted).

Defendants argue that Plaintiff ORTL's challenge that Ohio Revised Code § 3599.03 is

unconstitutional is now moot because corporations, like ORTL, no longer face any threat of

prosecution under the statute.  Defendants have stated in their Answer to Plaintiff's Amended

Complaint and in an Advisory Opinion issued by the Ohio Elections Commission on September 2,

2010, that in light of the *Citizens United* case, they will no longer enforce or interpret Ohio

Revised Code § 3599.03 to prohibit corporations and labor unions from making independent

expenditures from their general treasury funds to engage in political speech.  Defendants assert

that "[i]n the absence of any reasonable belief that the Defendants would act in contravention of

U.S. Supreme Court precedent to revert to pre-*Citizens United* enforcement of R.C. 3599.03,

ORTL's claim with respect to R.C. 3599.03 is now moot."  (Defs.' Memo. in Opp. at 7).

Article III of the United States Constitution confines the power of the federal courts to adjudication of "cases" or "controversies."  U.S. Const. Art. III, § 2. *See Allen v. Wright*, 468 U.S. 737, 750 (1984).  If a claim no longer presents a live case or controversy, the claim is moot and the federal court lacks jurisdiction to hear it.  *Allen*, 468 U.S. at 750.  A question of mootness arises when a challenged ordinance is repealed during the pendency of litigation, and a plaintiff seeks only prospective relief.  *See Kentucky Right to Life, Inc. v. Terry*, 108 F.3d 637, 644 (6th Cir. 1997); *see also Rembert v. Sheahan*, 62 F.3d 937, 940 (7th Cir. 1995).  Generally, the legislative repeal of a statute renders a case moot.  *Kentucky Right to Life, Inc.*, 108 F.3d at 645. Further, the Sixth Circuit has adhered to the principle that "acts of voluntary cessation by government officials are treated with greater solicitude that similar acts taken by private parties." *Kentucky Right to Life,* 108 F.3d at 645; *Hooper v. Morkle*, 219 F.R.D. 120 (S.D. Ohio 2003) (Frost, J.).  A party bears a heavy burden to show that a case is mooted.  *See, e.g., Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323 (noting that when government action is in response to litigation, this burden is even more difficult to carry).

However, a defendant's voluntary cessation of a challenged practice ordinarily does not deprive a federal court of its power to determine the legality of the practice.  *City of Mesquite v. Aladdin's Castle,* 455 U.S. 283, 289 (1982); *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953); *see, e.g., United States v. Trans-Missouri Freight Ass'n*, 166 U.S. 290 (1897).  But in the cases where a voluntary cessation of a challenged practice did not moot a case, those decisions hinged largely on the fact that a government official expressed an intent to resume his conduct. *See Aladdin's Castle*, 455 U.S. at 289-90 (case not moot where city announced its intention to reenact repealed ordinance).

-18-

Defendants argue that their statements in their Answer and the Ohio Elections Commission's Advisory Opinion moot this issue because there is no reasonable expectation that the Commission would repeal its Advisory Opinion or that Defendants would resume with enforcing Ohio Revised Code § 3599.03.

Plaintiff argues that "Defendants failed to take any steps, whatsoever, to address this unconstitutional scheme until after ORTL filed [its] Motion for a Temporary Restraining Order and Preliminary Injunction on August 28, 2010." (Doc. 82, p. 4-5). Additionally, Plaintiff asserts that the Advisory Opinion recently issued by the OEC was issued for the purpose of "manufacturing [Defendants'] mootness argument," and notes that this Advisory Opinion is revocable at any time by the OEC (*Id.* at 5.) Nonetheless, Plaintiff ORTL agrees that this issue has been resolved in this Court's Consent Decree filed September 15, 2010.

The Court agrees with Plaintiff. The *Citizens United* case was decided on January 21, 2010. The Ohio General Assembly, nor any of the Defendants had taken any action to clarify the current Ohio law in light of this Supreme Court decision until Plaintiff ORTL was permitted to amend its Complaint in this case and seek an injunction. There is no question that both parties agree that the issue with respect to Ohio Revised Code §3599.03, has been resolved. It was decided in Plaintiff's favor in the Consent Decree entered by this Court on September 15, 2010, permanently enjoining Defendants from enforcing this statute in connection with any independent expenditure by corporations or labor unions. However, in the absence of this adjudication, Plaintiff's claim would not be moot.

**C.     Constitutionality of Ohio Revised Code § 3517.102**

In its reply memorandum in support of its motion for a temporary restraining order and

preliminary injunction, Plaintiff argues that, even though the constitutionality of Ohio Revised Code § 3517.102 was not directly addressed in its Amended Complaint or its motion for preliminary relief, issues relating to this statute are "inextricably linked" to the issues raised in connection with Ohio Revised Code §§ 3517.1011 and 3599.03 and should be resolved in its favor at this time.  (Doc. 82).  However, in the parties' notice of outstanding issues (Doc. 78), they expressly agreed that the issue of whether Ohio Revised Code § 3517.102 is unconstitutional on its face should be reserved "for later determination."  Nonetheless, Plaintiff appears to present a strong argument that this statute implicates substantially similar issues as those relating to the statutes that the Court and the parties already have determined to be unconstitutional.  Thus, while the Court will not resolve this issue at this time, it will permit additional briefing on the issue for the Court's subsequent determination.  During the period of additional briefing, the parties are encouraged to resolve this matter.  But, if they are unable to resolve it, the briefing schedule shall be as follows:  Defendants shall respond to Plaintiff's contention that Ohio Revised Code § 3517.102 is unconstitutional on its face by Friday, October 1, 2010, and Plaintiff may file any reply in support by Wednesday, October 6, 2010.

**D.     Application of the Preliminary and Permanent Injunction Standard**

Having determined that this Court does not have jurisdiction with respect to the application of Section 7 of H.B. 1 to current Ohio law, and having granted Plaintiff injunctive relief on its Ohio Revised Code § 3599.03 claim in the Consent Decree, the Court need not address the application of the preliminary and permanent injunction standard.

-20-

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff ORTL's Motion for a Temporary Restraining Order and Preliminary Injunction is **GRANTED IN PART and DENIED IN PART.**  Also, Plaintiff's Motion to consolidate the preliminary injunction with a trial on the merits is **GRANTED**.

The Consent Decree filed on September 15, 2010, permanently enjoins Defendants from enforcing Ohio Revised Code § 3599.03(A), § 3517.1011(H) and §3517.01(B)(6), in connection with a corporation or labor organization's use of its money or property to make independent expenditures for, or in aid of, candidate elections in Ohio.

The Court finds it lacks jurisdiction to grant the remedy sought by Plaintiff as it relates to the application of Section 7 of H.B. 1 to the disclosure and disclaimer provisions of Ohio law.

There are remaining issues presented by the parties that will need to be addressed at a later date.  The parties are instructed to attempt to work out any remaining issues between themselves, but if no agreement can be reached, to contact the Court to arrange for a scheduling order for briefing on these matters.

The Clerk shall remove Documents 70 and 71 from the Court's pending motions list.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**