UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


**OHIO RIGHT TO LIFE SOCIETY, INC.,**

       **Plaintiff,**

                                             **Civil Action 2:08-cv-492**

   **v.**                                         **Judge George C. Smith**
                                                **Magistrate Judge Elizabeth P. Deavers**


**OHIO ELECTIONS COMMISSION,** *et al.***,**

       **Defendants.**


## ORDER AND REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Motion for Attorneys' Fees and Costs.  (ECF No. 85.)  Plaintiff requests approximately $352,000 in attorneys' fees and costs.  Defendants oppose Plaintiff's Motion, asking the Court to deny or significantly reduce Plaintiff's fee award.  (ECF Nos. 89 and 113.)  Several months after filing its Reply in Support of its Motion for Attorneys' Fees (ECF No. 91), Plaintiff filed a Supplemental Memorandum in Support of its Motion (ECF No. 108).  Defendants ask the Court to disregard Plaintiff's Supplemental Memorandum for failure to first obtain leave of Court or show good cause.  (ECF No. 109.)  For the reasons that follow, Defendants' request that the Court disregard Plaintiff's Supplemental Memorandum is **GRANTED**.  It is further **RECOMMENDED** that Plaintiff's Motion for Attorneys' Fees and Costs be **GRANTED**, but with a reduction to the total attorneys' fee and cost award.

# I.   BACKGROUND

Plaintiff, Ohio Right to Life Society, Inc. ("ORTL"), commenced this action on May 20, 2008, against Defendants, Ohio Elections Commission ("OEC"), the individual Members of the OEC, and then-Ohio Secretary of State Jennifer Brunner (collectively "Defendants"), seeking to enjoin Defendants from enforcing certain provisions of Ohio campaign finance law.  This action proceeded in three stages.

In the first stage, Plaintiff filed a seven-count Complaint seeking declaratory and injunctive relief.  In its Complaint, Plaintiff alleged that numerous Ohio campaign finance laws unconstitutionally regulated two proposed advertisements it intended to run on broadcast media from June 2008 though December 2008.  Plaintiff attached the proposed ads to its Complaint. As the Court previously noted, "Plaintiff's two proposed ads [were] nearly identical to the ads at issue in [*Federal Election Comm'n v. Wisconsin Right to Life, Inc.* ("*WRTL*"), 551 U.S. 449 (2007)]."  (Sept. 5, 2008 Opinion and Order 15, ECF No. 40.)  Further, the challenged blackout provisions in this action were modeled upon the federal blackout provisions at issue in *WRTL*. In their Answer filed three weeks later, Defendants conceded that the United States Supreme Court's ruling in *WRTL* precluded enforcement of Ohio's statutory blackout provisions with regard to Plaintiff's proposed ads.  One week later, Plaintiff moved for injunctive relief, raising as-applied and facial challenges to both Ohio's blackout provisions and its disclosure provisions. Based upon Defendants' earlier concessions, neither party briefed the merits of Plaintiff's as-applied challenges to the blackout provisions.  Defendants did, however, challenge Plaintiff's standing to seek relief.  More specifically, Defendants argued that Plaintiff lacked standing because no recognizable controversy existed based upon their concession and also because

2

Plaintiff had failed to take enough steps towards producing the ads. In its Reply, Plaintiff did not brief or even mention the standing arguments that Defendants raised. Both parties did, however, brief the merits of Plaintiff's facial challenge to the blackout provisions, as well as its facial and as-applied challenges to Ohio's disclosure scheme.

On September 5, 2008, the Court issued its Opinion and Order based solely upon the submitted briefs. (*Id*. at 1 (noting that the "parties have agreed that there is no need for an evidentiary hearing").) The Court rejected Defendants' standing arguments, concluding that (1) Defendants' admission that *WRTL* precluded enforcement of Ohio's blackout provisions against Plaintiff's proposed ads did not amount to an agreement not to enforce the provisions against the ads; and (2) Plaintiff had taken enough steps towards producing the proposed ads to demonstrate that it faced the requisite injury when it filed suit. (*Id*. at 9–11.) The Court enjoined Defendants from enforcing Ohio's blackout provisions with regard to the proposed ads during the thirty-day period preceding the November 4, 2008 general election. The Court rejected Plaintiff's remaining three claims. Thus, in the first stage, Plaintiff prevailed solely on its as-applied challenges to Ohio's blackout provisions, the merits of which Defendants had expressly conceded. As a result of the Court's September 5, 2008 preliminary injunction, ORTL was permitted to run its proposed ads during the 30-day period before the November 4, 2008 general election. ORTL never ran any ads during the 2008 election cycle, and the preliminary injunction expired with the passing of the election.

The Undersigned views the second stage as spanning from the Court's entry of the September 5, 2008 Opinion and Order through the filing of Plaintiff's Amended Verified Complaint on August 24, 2010. In Plaintiff's words, during this time, the "case lay fallow."

(Pl.'s Mot. 4, ECF No. 85.)  In January 2009, Defendants propounded requests for admissions seeking Plaintiff's admission that it had not run its proposed ads and that the bill referenced in the proposed ad had expired when Ohio's General Assembly adjourned.  Plaintiff objected, prompting Defendants to seek Court involvement.  On March 9, 2009, the Magistrate Judge ordered Plaintiff to respond to the requests for admission, concluding that the requests were relevant to Defendants' defense of mootness.  (ECF No. 49.)  Plaintiff objected to the Magistrate Judge's Order.  (ECF No. 51.)  On January 20, 2010, the Court overruled Plaintiff's Objections and affirmed the Magistrate Judge's Order.  (ECF No. 55.)

In March 2010, Defendants moved to dismiss the action for lack of subject matter jurisdiction on the grounds that there was no longer any live dispute between the parties.  (ECF No. 56.)  After the parties had fully briefed Defendants' Motion to Dismiss, Plaintiff moved to amend its Complaint to add a new claim based upon *Citizens United v. FEC*, 558 U.S. 310 (2010) ("*Citizens United*"), and to allege its intent to run broadcast advertisements during the fall 2010 election.  (ECF No. 65.)  In a two-page Order, the Court permitted Plaintiff to amend its Complaint over Defendants' objections.  (ECF No. 68.)  Referencing Plaintiff's allegations of intent to run advertisements during the fall 2010 election, the Court found that Plaintiff's proposed Amended Verified Complaint was "an attempt to cure any jurisdictional deficiency relating to the original complaint."  (Aug. 16, 2010 Order 1–2, ECF No. 68.)  Without considering the merits, the Court contemporaneously denied Defendants' Motion to Dismiss as moot, explaining that "Defendants' motion to dismiss on jurisdictional grounds (Doc. 56) does not address the additional facts in the amended complaint, which arguably cure any jurisdictional deficiency."  (*Id*. at 2.)  On August 24, 2010, Plaintiff filed its Amended Verified Complaint.

(ECF No. 69.)

In the third and final stage of the litigation, Plaintiff filed a Motion for a Temporary Restraining Order on August 26, 2010, seeking to enjoin the enforcement of Ohio's blackout and disclosure provisions. (ECF Nos. 69 and 70.) Defendants conceded that based upon *Citizens United*, Ohio could not apply some of the challenged statutes to Plaintiff's intended conduct. (Defs.' Answer ¶¶ 27, 40, 54–58, ECF No. 73; Defs.' Mem. in Opp. TRO 2, ECF No. 81.) Based upon this concession, on September 15, 2010, the parties entered into a Consent Decree whereby the parties agreed upon the following two issues: (1) Ohio's blackout provisions are unconstitutional to the extent they prohibit a corporation from using its treasury dollars to independently pay for broadcast ads identifying a candidate within thirty days of an election; and (2) Ohio Revised Code Section 3599.03(A) is unconstitutional to the extent it prohibits a corporation from using its money to make independent expenditures for or in aid of candidate elections in Ohio. (ECF No. 80.)

Because the Consent Decree did not resolve Plaintiff's remaining disclosure claims, the Court ordered the parties to submit a notice identifying outstanding issues. (ECF No. 76.) After submission of this Notice, the parties completed briefing on the remaining issues. (ECF Nos. 81 and 82.) On September 20, 2010, the Court issued its Opinion and Order based solely upon the submitted briefs. (ECF No. 83 at 1 (noting that " both parties have agreed that there is no need for an evidentiary hearing").) The Court agreed with Defendants, that the Court "lack[ed] jurisdiction to grant the remedy sought by [Plaintiff] as it relates to the disclosure and disclaimer provisions." (*Id*. at 13.) The Court noted that this finding rendered most of the remaining issues Plaintiff raised and briefed moot. (*Id*. at 13.) The Court further found that the Consent Decree

5

resolved one of the issues raised.  Finally, the Court noted that Plaintiff raised one of the issues

for the first time in its Reply Memorandum in Support of its Motion for a Temporary Restraining

Order.  The Court therefore concluded that additional briefing on that issue was appropriate in

the event the parties were unable to extrajudicially resolve the issue.  Plaintiff did not further

pursue this claim.  Thus, in the final stage of this litigation, Plaintiff prevailed solely on the

issues resolved in the Consent Decree.

Plaintiff subsequently filed the subject Motion for Attorneys' Fees and Costs, seeking

approximately $352,000 pursuant to 42 U.S.C. § 1988.  (ECF No. 85.)  Plaintiff has submitted

documentation in the form of eighty-eight pages of invoices and an affidavit from Plaintiff's

counsel, William Todd.  Plaintiff maintains that the fees it requests are reasonable based upon

the lodestar calculation.  Defendants oppose Plaintiff's fee request and ask the Court to deny

Plaintiff's Motion or to reduce the fees awarded to $35,250 and the expenses to $460.  (ECF No.

89.)  In their Memorandum in Opposition, Defendants assert that reductions are appropriate for

entries that are unreasonable on their face and for Plaintiff's counsel's failure to exercise

reasonable billing judgment.  Defendants further assert that the Court should disallow fees that

are not adequately documented.  Defendants also challenge Plaintiff's counsel's requested hourly

rate and seek further adjustment to reflect Plaintiff's limited success.  Finally, in their

Memorandum in Opposition, Defendants pointed out that Plaintiff's initial lodestar calculation

did not add up mathematically.  On this last point, Plaintiff, in its Reply, explained that the

mathematical discrepancy was attributable to its failure to attach three invoices, which accounted

for approximately $75,000 in attorneys' fees.  (ECF No. 91.)  Plaintiff attached the missing

invoices to its Reply.  (ECF No.  91-3)  The Court declined to grant Defendants' request to

summarily deny the $75,000 in attorneys' fees reflected in the three invoices due to Plaintiff's counsel's inadvertence.  (ECF No. 112.)  The Court, however, permitted Defendants to file a Sur-Reply to address the reasonableness of the three invoices at issue.  (*Id*.)  In their Sur-Reply, Defendants argue as they do in their Memorandum in Opposition that several reductions to Plaintiff's requested fees are warranted.  (ECF No. 113.)

In addition to the foregoing briefing relating to attorneys' fees, more than a year after it filed its Motion for Attorneys' Fees and Costs (ECF No. 85) and without leave of Court, Plaintiff filed a Supplemental Memorandum in Support of its Attorney Fee Application (ECF No. 108). Defendants ask the Court to disregard Plaintiff's Supplemental Memorandum as untimely and filed without leave of Court.  (ECF No. 109.)

## II.  Plaintiff's Supplemental Memorandum (ECF No. 108)

As a threshold matter, Defendants' request that the Court disregard Plaintiff's Supplemental Memorandum is well taken.  As noted above, Plaintiff filed a Supplemental Memorandum without leave of court more than a year after it filed its Motion for Attorneys' Fees and Costs.  Southern District of Ohio Local Civil Rule 7.2(a)(2) provides that "[n]o memoranda beyond [the memorandum in opposition and reply] will be permitted except upon leave of court for good cause shown."  S. D. Ohio Civ. R. 7.2(a)(2).  In its introductory paragraphs, Plaintiff appears to suggest that the Supplemental Memorandum is warranted in light of Defendants' conduct in mediation and the absence of a hearing on its Motion.  Neither of these bases supply good cause for the filing of an untimely Supplemental Memorandum without leave.  First, the parties' decisions regarding settlement are not relevant to the Court's consideration of Plaintiff's fee application.  Second, Plaintiff is not entitled to a hearing or

supplemental briefing in the absence of a hearing.  Rather, what is required is that parties have

"notice of opposing arguments and an opportunity to present their side of the story."  *Bell v.

Prefix, Inc.*, Nos. 11-1508 & 11-1690, 2013 WL 323005, at *2 (6th Cir. Jan. 29, 2013) (citations

omitted).  As the United States Supreme Court recently emphasized, "the determination of fees

'should not result in a second major litigation.'"  *Fox. v. Vice*, 131 S.Ct. 2205, 2216 (2011)

(quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).  Here, after Plaintiff filed its request

for attorneys' fees and Defendants responded, Plaintiff filed a Reply.  Thus, Plaintiff had a full

and fair opportunity to respond to Defendants' arguments.  *Cf. Bell*, 2013 WL 323005 at *2

(finding that the trial court did not abuse its discretion in reducing the requested fees by more

than 80% without a hearing where the movant had an opportunity to file a reply and respond to

the arguments raised in opposition to the movant's application for fees).  In sum, because

Plaintiff filed its untimely Supplemental Memorandum without leave of Court and without the

requisite good cause showing, the Court declines to consider it.

### III.    Plaintiff's Motion for Attorneys' Fees and Costs (ECF No. 85)

Congress enacted 42 U.S.C. § 1988 as an exception to the "general rule in our legal

system . . . that each party must pay its own attorney's fees and expenses . . . in order to ensure

that federal rights are adequately enforced."  *Perdue v. Kenny A.*, 559 U.S. 542, 550 (2010)

(internal citations omitted).  Pursuant to § 1988, in certain civil rights actions, "the court, in its

discretion, may allow the prevailing party, other than the United States, a reasonable attorney's

fee as part of the costs."  *See* 42 U.S.C. § 1988(b); *Hensley*, 461 U.S. at 426.  A party seeking

attorneys' fees under a fee-shifting statute such as § 1988 bears the burden to show that he or she

is entitled to the amount requested.  *Hensley*, 461 U.S. at 433; *Webb v. Dyer County Bd. of*

8

*Educ.*, 471 U.S. 234, 242 (1985).

When considering a motion for attorneys' fees, a court must first determine whether the petitioning party was the prevailing party.  *Hensley*, 461 U.S. at 433.  A court next determines what fee is "reasonable."  *Id.*  "The starting point for determining the amount of reasonable attorney fees is the 'lodestar amount' which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate."  *Imwalle v. Reliance Med. Prods. Inc.*, 515 F.3d 531, 551-52 (6th Cir. 2008) (citing *Hensley*, 461 U.S. at 433); *Waldo v. Consumers Energy Co.*, --- F.3d ----, No. 12-1518, 2013 WL 4038747, at *12 (6th Cir. Aug. 9, 2013) ("[A] district court begins by determining 'the fee applicant's lodestar, which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate." (internal quotation marks and citation omitted)).  The resulting sum may be adjusted to reflect factors such as the "results obtained."  *Hensley*, 461 U.S. at 434 (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)); *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 621 (6th Cir. 2007).  "Determining a 'reasonable attorney's fee' is a matter that is committed to the sound discretion of a trial judge."  *Perdue*, 559 U.S. at 558.

Turning to the merits of Plaintiff's fee petition, Defendants do not dispute that Plaintiff is the prevailing party.  Likewise, Defendants do not dispute that the lodestar method of computation should be applied to determine any award of attorneys' fees.  Rather, Defendants challenge the requested hourly rates for Plaintiff's counsel and the reasonableness of the hours requested.  The Undersigned first considers the reasonableness of the hourly rates Plaintiff's counsel billed before turning to the reasonableness of the number of hours Plaintiff's counsel

9

expended and the reasonableness of the expenses Plaintiff seeks to recover.

**A.      Reasonable Hourly Rate**

"[T]he lodestar looks to 'the prevailing market rates in the relevant community.'"

*Perdue*, 559 U.S. at 551.  "The appropriate rate . . . is not necessarily the exact value sought by a

particular firm, but is rather the market rate in the venue sufficient to encourage competent

representation."  *Gonter*, 510 F.3d at 618.  This is because "Section 1988's aim is to enforce the

covered civil rights statutes, not to provide 'a form of economic relief to improve the financial

lot of attorneys.'"  *Perdue*, 559 U.S. at 551 (quoting *Penn. v. Del. Valley Citizens' Council for*

*Clean Air*, 478 U.S. 546, 565 (1986)).  In determining the prevailing rate, a court may "'rely on a

party's submissions, awards in analogous cases, state bar association guidelines, and its own

knowledge and experience in handling similar fee requests.'"  *Waldo*, 2013 WL 4038747 at *12

(quoting *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. A'ppx 496, 499 (6th Cir. 2011);

*see also Harmon v. McGinnis, Inc*., 263 F. App'x 465, 469 (6th Cir. 2008) ("[C]ourts are

permitted to, and indeed should, consider prior fee awards in determining the proper attorney's

fee rate." (citations omitted)).  "[T]he district court has the discretion to choose either the current

or historical rates so long as it explains how the decision comports with the ultimate goals of

awarding reasonable fees."  *Gonter*, 510 F.3d at 617.  "[T]he party seeking attorneys' fees bears

the burden of proving the reasonableness of the hourly rates claimed." *Van Horn*, 436 F. A'ppx

at 498 (citing *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999)).

Here, Plaintiff seeks an hourly rate ranging between $445 and $465 per hour for attorney

William Todd.  Plaintiff indicates that this hourly rate reflects "the usual and customary firm

billing rates."  (Pl.'s Mot. 11, ECF No. 85.)  In support of this requested hourly rate, Plaintiff's

counsel submitted his own affidavit and the Laffey Matrix.  Plaintiff further notes that Mr. Todd has engaged in the active practice of law for nearly thirty-five years and "has developed a specialized expertise in the area of campaign finance law and its intersection with the First Amendment."  (*Id*. at 11–12.)

Defendants counter that Plaintiff's requested hourly rates exceed the amount necessary to encourage competent counsel to take on a case such as the instant one.  Relying upon *Moore v. Brunner,* Nos. 2:08-cv-224 & 2:08-cv-555, 2010 WL 317017 (S.D. Ohio Jan. 25, 2010), Defendants assert that $250 per hour is a reasonable rate for attorneys specializing in election law within this jurisdiction.

This Court resolved three attorney fee disputes in election-law actions around the same time the instant case was litigated.  In *Libertarian Party of Ohio v. Brunner*, the first of these cases, Judge Frost, without discussion, reduced the requested hourly rate of $450 per hour to $300 per hour.  No. 2:04-cv-08, 2007 WL 4171630, at *4 (S.D. Ohio Nov. 20, 2007).  Similarly, in a January 25, 2010 decision, Judge Sargus reduced the requested hourly rates of $400 and $450 per hour to $250 per hour in two election-law cases.  *Moore v. Brunner*, Nos. 2:08-cv-224 & 2:08-cv-555, 2010 WL 317017, at *3 (S.D. Ohio Jan. 25, 2010) (resolving motions for attorneys' fees in *Moore v. Brunner*, No. 2:08-cv-224, and *Libertarian Party of Ohio v. Brunner*, No. 2:08-cv-555).  In his Order, Judge Sargus analyzed whether the requested rates "exceed[ed] the amount which would be necessary to encourage competent lawyers to undertake . . . representation" in the subject election-law actions.  *Id*.  He concluded that "an hourly rate of $250 is adequate to attract competent counsel within this Court's venue while avoiding producing a windfall for attorneys."  *Id*.

11

The Undersigned agrees with the analysis and conclusion in *Moore v. Brunner* that the prevailing market rate within this jurisdiction during the relevant time frame was $250 per hour. In reaching this conclusion, the Undersigned notes that the attorneys in *Moore*, like Plaintiff's counsel, "enjoy[ed] high levels of experience and expertise." *Id.* at *2. Further, the Undersigned concludes that this case was not so complex as to warrant an upward departure from the $250 prevailing market rate Judge Sargus adopted. In its Motion to Advance Trial on the Merits and again in its Motion for Attorneys' Fees and Costs and Reply, Plaintiff concedes as much. (*See* Pl.'s Mot to Advance a Trial 3, ECF No. 71 ("Defendants cannot claim that the issue of the constitutionality of the campaign finance laws involved in this case is a set of issues known only to a few practitioners of an ancient and obscure area of practice."); Pl.'s Mot. for Atty. Fees 3–5, ECF No. 85 (acknowledging that the fact pattern and issues presented in the instant action mirrored the facts and issues presented in *WRTL* in the first stage of litigation and *Citizens United* in the second stage); Pl.'s Reply 2–3, ECF No. 91 ("[T]he *WRTL* analysis should have been relatively straight-forward to apply to the offending provisions in Title 35 of the Revised Code, [and] [t]he decision in *Citizens United* was straight forward and plainly applied to the provisions in Title 35 of the Revised Code that were designed to restrict the freedom of speech of corporations and labor organizations.").) Finally, Plaintiff's reliance upon the Laffey Matrix does not persuade the Undersigned to find that a higher hourly rate is appropriate. The Laffey Matrix, which reflects hourly rates for attorneys litigating in the Washington-Baltimore area, is not compelling given the authority within this venue setting forth the prevailing market rates in this jurisdiction for experienced attorneys litigating election-law actions. *See Harmon*, 263 F. App'x at 468–69 (affirming trial court's decision rejecting the applicability of the Laffey Matrix

because it "concerned only rates payable in the District of Columbia"); *McCutcheon v. Finkelstein Kern Steinberg & Cunningham*, No. 3-11-0696, 2013 WL 4521016, at *2–3 (M.D. Tenn. Aug. 27, 2013) (relying on prior fee award in actions arising within the Middle District of Tennessee to ascertain the prevailing rate and characterizing the Laffey Matrix as "inapposite" because it reflected a rate schedule for attorneys in the Washington-Baltimore area). Accordingly, it is **RECOMMENDED** that the Court conclude that $250 was the prevailing market rate within this jurisdiction during the relevant time frame for experienced attorneys litigating election-law actions.

Plaintiff's fee application also includes twenty-nine entries totaling 47.75 hours expended by individuals identified only by their initials: LP, KH, LBB, LSL, and KJ. Defendants, in their Memorandum in Opposition, point out that Plaintiff's counsel failed to submit any affidavits or evidentiary materials identifying these individuals or explaining the bases for their hourly rates. Defendants urge the Court to excise these individuals' time entries on that basis. In its Reply, Plaintiff fails to respond to Defendants' arguments or to offer additional information identifying these individuals or the bases for their hourly rates. Nevertheless, with the exception of LP's entries, the Undersigned declines to recommend that the Court strike their entries simply because Plaintiff failed to identify the individuals by name and explain the bases for their hourly rates. *Cf. Women's Med. Prof. Corp. v. Baird, M.D.*, No. 2:03-cv-162, 2003 WL 23777732, at *4 (S.D. Ohio Dec. 15, 2003) (rejecting argument that the Court should deny requests for paralegal and law clerk fees on the grounds that the paralegals and law clerks were not identified by name and did not submit their own affidavits attesting that their time entries were accurate and truthful).

The individual with the initials LBB bills at an hourly rate of $310. Based upon LBB's

billing descriptions, LBB appears to be an attorney.  It is therefore **RECOMMENDED** that the Court conclude that $250 is the appropriate market rate for LBB.

The individuals with the initials KH, LSL, and KJ bill at hourly rates ranging from $185 to $195.  Based upon their billing descriptions, these individuals appear to be paralegals.  During the relevant time frame within this jurisdiction, the prevailing hourly rates for paralegals ranged from $40 to $125.  *See, e.g., Teeter v. Comm'r of Soc. Sec.*, No. 1:11-CV-2376, 2013 WL 5279102, at *7 (S.D. Ohio Sept. 18, 2013) (reducing recoverable rate for paralegal services to $40 per hour in the absence of any supporting documentation setting forth the prevailing hourly rates for paralegals within the district); *Spengler v. Worthington Cylinders*, No. 05-977, 2008 WL 4346779, at *2 (S.D. Ohio Sept. 18, 2008) (concluding that the documentation supplied by the movant demonstrated the reasonableness of a rate of $75 per hour for a paralegal in an ADEA action); *Plummer v. Hartford Life Ins. Co.*, No. C-3-06-94, 2007 WL 838926, at *3 (S.D. Ohio Mar. 15, 2007) (finding that documentation submitted adequately demonstrated that $85 was a reasonable hourly rate for paralegal time in an ERISA case);  *Doe v. Ohio*, No. 2:91-cv-464, 2010 WL 2854106, at *5 (S.D. Ohio July 19, 2010) (awarding fees at a rate of $95 per hour to two paralegals, each with ten years of experience, who worked on a successful IDEA claim ending in settlement in October 2009); *McCarthy v. America,* 289 F.R.D. 258, 263 (S.D. Ohio 2013) (accepting hourly rate of $100-$110 as reasonable for paralegals for services performed in 2012 where the movant provided documentation in support of the rate and the party contesting the fee application did not contest the reasonableness of the rate); *Gunasekera v. Irwin*, 774 F.Supp.2d 882 (S.D. Ohio 2011) (awarding paralegal fees at a rate of $110 per hour for a § 1983 claim spanning from 2007 to 2010 where the movant had provided documentation

14

supporting the reasonableness of the rates); *Armstrong v. Receivables Performance Mgmt.*, *LLC*, No. 2:11-CV-387, 2012 WL 404893, at *3–4 (S.D. Ohio Feb. 8, 2012) (awarding paralegal fees at a rate of $125 per hour). Here, in the absence of any documentation revealing the paralegals' level of experience or otherwise supporting the reasonableness of their rates, it is **RECOMMENDED** that the Court find that $75 per hour is a reasonable rate within this jurisdiction during the relevant time period.

Finally, Plaintiff's application contains two entries totaling 1.5 hours for an individual with the initials LP who appears to bill at an hourly rate of $195. The entries relate to the preparation of an "audit response memo." (*See* Aug. 31, 2009 Invoice, ECF No. 91-3.) Plaintiff did not file any such memorandum, and the Undersigned cannot discern how this time is related to this litigation, let alone confirm that the hours were actually and reasonably expended. Thus, rather than contemplate the appropriate hourly rate, it is **RECOMMENDED** that the Court strike these entries altogether. *See Imwalle*, 515 F.3d at 553 (noting the "key requirement" that the documentation offered in support of a fee petition "be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation") (internal quotation marks and citation omitted)).

## B.     Reasonableness of the Hours Billed

Having settled on the appropriate hourly rates, the Undersigned must now consider the second multiplier of the lodestar computation, the number of hours reasonably expended. A trial court must exclude from its lodestar calculation any hours that were not reasonably expended. *Binta B. v. Gordon*, 710 F.3d 608, 67–28 (6th Cir. 2013) (citing *Hensley*, 461 U.S. at 434). The

fee applicant bears the burden of establishing that the hours requested were reasonably expended. *Hensley*, 461 U.S. at 433–34. "'[H]ours that are excessive, redundant, or otherwise unnecessary'" are properly excluded from a fee petition." *Binta B.*, 710 F.3d at 628. Only fees "reasonably expended *on the litigation*" are compensable under § 1988. *Id*. at 629, 638 (internal quotation marks and citations omitted). Hours that lack sufficient documentation are also properly excluded. *Imwalle*, 515 F.3d at 552–53; *Hensley*, 461 U.S. at 433. Finally, "[a] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440.

Defendants posit that reductions are warranted to reflect insufficient billing descriptions. Defendants further maintain additional reductions are necessary due to Plaintiff's counsel's failure to exercise billing judgment to excise unnecessary and excessive hours. Finally, Defendants assert that Plaintiff's fee award should be further reduced to reflect Plaintiff's limited success. The Undersigned agrees with Defendants that significant reductions are warranted to account for Plaintiff's limited success as well as its counsel's lack of billing judgment and inadequate fee documentation.

The Undersigned declines, however, to expend the judicial resources to engage in a line-by-line analysis of each time entry included in Plaintiff's voluminous fee documentation. (*See* Plaintiff's Counsel's Invoices 1–88, ECF No. 94-1.) Such an undertaking is especially impractical here given the voluminous nature of the billing records and Plaintiff's counsel's practice of lumping entries and utilizing vague descriptions. Courts have routinely recognized the propriety of utilizing across-the-board cuts as an alternative to analyzing each entry one by one under these circumstances. *See Hensley*, 461 U.S. at 436–37 (indicating that trial courts

"may simply reduce the award" as an alternative to "attempt[ing] to identify specific hours that should be eliminated"); *Auto Alliance Intern., Inc. v. United States Customs Serv.*, 155 F. App'x 226, 228 (6th Cir. 2005) (citing *Coulter v. Tenn.*, 805 F.2d 146, 151 (6th Cir. 1986)) (recognizing propriety of "an across the board reduction based on excessive or duplicative hours"); *Northeast Coalition of the Homeless v. Brunner*, No. 2:06-cv-896 (S.D. Ohio Nov. 30, 2010) ("[I]f reductions to the requested number of hours are appropriate, a court has the discretion to utilize a simple across-the-board reduction by a certain percentage as an alternative to line-by-line reductions."); *Cleveland Area Bd. of Realtors v. City of Euclid,* 965 F.Supp. 1017, 1021 n.5 (N.D. Ohio 1997) (noting that "[c]ourts have recognized the impracticality of specifying each and every hour to be excluded" in civil rights fee applications with voluminous billing records and that "most circuits, including the Sixth, have authorized across-the-board fee reductions as an appropriate method of trimming fat from a fee application" and collecting cases from circuit courts authorizing such fee applications) (internal quotation marks and citations omitted)); *Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.,* 707 F.Supp.2d 737, 76–65 (N.D. Ohio 2010) (applying an across-the-board reduction of fifty percent and collecting cases applying across-the-board reductions ranging between forty percent and ninety percent). Indeed, the Supreme Court recently recognized the inefficiencies of such line-by-line auditing of fee applications:

> But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

*Fox*, 131 S.Ct. at 2216.  *See also Crim v. Comm'r of Soc. Sec.*, No. 1:11-cv-137, 2013 WL

17

1063476, at *4 (S.D. Ohio Mar. 14, 2013) (noting that the case law within this Circuit does not mandate "slavish attention to detailed analysis of each time entry" in order "to ferret out wasteful attorney time entries," which "would result in an enormous expenditure of judicial resources . . . particularly where analysis of other factors makes clear that the total award is not 'reasonable.'").

Having reviewed Plaintiff's Motion for Attorneys' Fees and the supporting documentation together with the parties' briefing on the Motion and the case history, including the parties' filings and Court Orders, the Undersigned **RECOMMENDS** that the Court apply a ninety-percent reduction in the hours requested.  In order to explain the bases for this recommended reduction, the Undersigned will first discuss the level of success Plaintiff achieved before highlighting illustrative examples of Plaintiff's counsel's lack of billing judgment.  In discussing the level of success Plaintiff achieved, the Undersigned will also provide a brief overview of the breakdown of hours Plaintiff's counsel expended on this litigation as reflected in the invoices.

      1.      **Reasonableness of the Hours Expended in Relation to the Success Achieved**

"'[T]he most critical factor' governing the reasonableness of a fee award 'is the degree of success obtained.'" *Waldo*, 2013 WL 4038747 at *13 (quoting *Hensley*, 461 U.S. at 436).  The United States Court of Appeals for the Sixth Circuit has routinely rejected mechanical reductions based upon the ratio of successful claims to claims raised.  *Imwalle*, 515 F.3d at 554.  Instead, in partial-victory situations, a court must first consider whether the failed claims were related to the successful claims.  *Hensley*, 461 U.S. at 434.  A court must then consider whether the plaintiff "achiev[ed] a level of success that makes the hours reasonably expended a satisfactory basis for

making a fee award." *Id.*  With regard to this latter inquiry, the Sixth Circuit has recently observed that "[t]he fact that the plaintiff is a 'prevailing party . . . may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved.'"  *Binta B.*, 710 F.3d at 639 (quoting *Hensley*, 461 U.S. at 436).  Put another way, even where a plaintiff achieves limited success, "the product of hours reasonably expended on the litigation as a whole times a reasonably hourly rate may be an excessive amount . . . even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith."  *Hensley*, 461 U.S. at 436.

Such is the case here.  Neither party disputes that Plaintiff is the prevailing party.  The Undersigned likewise concludes that Plaintiff is the prevailing party.  *See Binta B.*, 710 F.3d at 620 (noting that there was no dispute that the plaintiffs, who had obtained relief under a consent decree, were prevailing parties for purposes of their entitlement to an attorneys' fee award under 42 U.S.C. § 1988); *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 (2001) (plaintiff is a prevailing party for purposes of a fee award when there is a "material alteration in the parties' legal relationship" (internal quotation marks and citation omitted)).  Defendants, however, advocate for a 75% reduction to account for Plaintiff's partial-victory, asserting that "such a reduction reflects Plaintiff's level of success in this case."[1]  (Defs.' Sur-Reply 2, ECF No. 113.)  Plaintiff asserts that its counsel is entitled to a full compensatory fee in light of the excellent results it obtained.  Plaintiff adds that many of the hours it was required to expend are attributable to Defendants' "recalcitrance" and "unclean hands."  (Pl.'s Reply 4–5, ECF No. 91.)  The Undersigned agrees that a reduced fee is appropriate because the

_____

[1]In addition to this 75% reduction to account for limited success, Defendants ask to further excise hundreds of hours of time to account for Plaintiff's counsel's lack of billing judgment and insufficient fee documentation.

number of hours Plaintiff's counsel expended on the litigation as a whole is excessive in relation to the success achieved and the scope of the litigation as a whole. In support of this finding, the Undersigned now reviews the hours expended in relation to the success obtained for each stage of this litigation and the litigation as a whole.

### a. The September 5, 2008 Preliminary Injunction

With regard to the first stage of the litigation, which involved the 2008 preliminary injunction, Plaintiff prevailed *solely* on its as-applied challenge to Ohio's blackout provisions. As Plaintiff acknowledges, its as-applied challenge to Ohio's blackout statutes was "relatively straight-forward" given that the United States Supreme Court had recently set forth the applicable law in *WRTL*. (*See* Pl.'s Reply 2, ECF No. 91.) Plaintiff correctly explains that in *WRTL*, "the United States Supreme Court determined that under certain circumstances, the 'blackout periods' set forth in 2 U.S.C. § 441b were unconstitutional." (Pl.'s Mot. 3–4, ECF No. 85.) As Plaintiff observes, the application of *WRTL* was "straight-forward" because the Ohio blackout provisions at issue in this case were "modeled upon" and had the same effect as the federal blackout provisions in *WRTL*, and Plaintiff's proposed ads in this action mirrored the ads at issue *WRTL*. (Pl.'s Mot. 3–4, ECF No. 85.)

Almost immediately and even before Plaintiff moved for an injunction, Defendants conceded that *WRTL* precluded enforcement of Ohio's blackout statutes to its proposed ads. (*See* September 5, 2008 Opinion and Order 14, ECF No. 40 (noting that Defendants had expressly conceded in both their Answers and again in their Memorandum in Opposition to Plaintiff's Motion for a Preliminary Injunction that *WRTL* precludes enforcement of Ohio's blackout provisions during the thirty-day period preceding the November 4, 2008 general

20

election).)  As set forth above, neither party briefed the merits of this claim in connection with

Plaintiff's Motion for a Preliminary Injunction.

After noting that Defendants had conceded that *WRTL* precluded enforcement of Ohio's

blackout statutes with regard to Plaintiff's proposed ads, the Court analyzed the issue in a single

paragraph as follows:

> Plaintiff's two proposed ads are nearly identical to the ads at issue in *WRTL*.  Like
> the *WRTL* proposed ads, Plaintiff's proposed ads do not consist of express advocacy
> or the functional equivalent of express advocacy.  And, like the *WRTL* Court, the
> Court finds that Defendants have not identified an interest sufficiently compelling
> to justify burdening Plaintiff's speech.  Consequently, the Court finds that [Ohio
> Revised Code §§ 3517.1011(H) and 3517.01(B)(6) are] unconstitutional as applied
> to Plaintiff's two proposed ads.

(Sept. 5, 2008 Opinion and Order 15, ECF No. 40.)  Thus, this Court, like the parties, considered

the sole claim Plaintiff prevailed upon to be simple and straight-forward in light of *WRTL* and

the virtually identical facts presented in this case.[2]

In addition to this straight-forward, uncontested claim, Plaintiff brought a claim

challenging the facial validity of Ohio's blackout provisions and also as-applied and facial

challenges to Ohio's disclosure provisions.  Although arguably related to its sole successful

claim, Plaintiff's unsuccessful facial challenge to Ohio's blackout provision was not "straight-

forward" and was premised upon a different legal theory.  Further, Defendants contested the

merits of Plaintiff's facial challenge to Ohio's blackout provisions.  Defendants likewise

---

[2]As explained above, Defendants did challenge whether Plaintiff had taken enough steps
towards producing the ads to so as to have suffered the requisite injury sufficient to confer
standing.  Plaintiff, however, did not respond to or even acknowledge Defendants' challenges
relating to standing in its Reply.  Consistently, Plaintiff's counsel's billing entries do not reflect
that counsel expended any time researching or otherwise contemplating Defendants' standing
challenge prior to Court's resolution of the issue in its September 5, 2008 Opinion and Order.

contested the merits of Plaintiff's as-applied and facial challenges to Ohio's disclosure provisions. Plaintiff's unsuccessful challenges to Ohio's disclosure schemes involved a completely different set of statutory provisions, sought different relief, and shared no common legal theories with Plaintiff's sole successful claim.

In light of the foregoing, and given the simplicity of the sole claim Plaintiff prevailed upon and the absence of any opposition with regard to the merits of that claim, the Undersigned cannot conclude that the hours expended were reasonable in relation to the success achieved. Plaintiff filed its Complaint in this action on May 20, 2008. Prior to and in connection with filing the Complaint, Plaintiff's counsel expended 111 hours of attorney time plus an additional 7.25 hours of paralegal time. Thereafter, Plaintiff's counsel expended an additional 49 hours of attorney time and one hour of paralegal time in connection with preparation of and filing of its Motion for a Preliminary Injunction. Plaintiff's counsel expended an additional 16.5 hours of attorney time before filing its five-page Reply to review Defendants' opposition memorandum, review the file, research case law, and draft its Reply.[3] Understandably, Plaintiff's five-page Reply in Support of its Motion for Preliminary injunction, like its Motion, does not contain briefing addressing the merits of the sole claim upon which it prevailed. (*See* ECF No. 39.) While awaiting the Court's Order on its fully-briefed Motion for a Preliminary Injunction, Plaintiff's counsel expended an additional 4.25 hours reviewing the file. Plaintiff's counsel then expended 2 hours reviewing the Court's September 5, 2008 Opinion and Order. As noted above, in that Opinion and Order, the Court devoted less than one page to analyzing the sole claim upon

---

[3]Plaintiff's counsel's time entries also reveal an expenditure of 6.5 hours of attorney time for working on or analyzing discovery issues prior to filing Plaintiff's Reply.

which Plaintiff prevailed.  In total, in this first stage of the litigation, Plaintiff's counsel

expended 204 hours.  Due to the vagueness of the entries and Plaintiff's counsel's practice of

lumping entries together, the Undersigned is unable to discern how many hours were expended

on Plaintiff's as-applied challenge to Ohio's blackout provisions.  Presumably, though, of the

hours incurred, Plaintiff's experienced litigation counsel spent minimal time on the sole

successful claim given its simplicity and Defendants' express concession regarding the claim

even before Plaintiff filed its Motion for a Preliminary Injunction.  Thus, although Plaintiff

obtained prevailing party status during the first stage of the litigation, the Undersigned concludes

that significant reduction is warranted because the hours expended as a whole are excessive in

light of the success achieved.

> **b.      Following the September 5, 2008 Preliminary Injunction Opinion and Order Through Plaintiff's August 24, 2010 Amended Verified Complaint**

In Plaintiff's words, "[f]ollowing this Court's grant of a preliminary injunction in the fall

of 2008, this case lay fallow."  (Pl.'s Mot. 4, ECF No. 85.)  Plaintiff's counsel, however, did not.

In their Motion for Attorneys' Fees and Costs, Plaintiff suggests that during this period, its

counsel simply awaited and monitored the *Citizens United* action.  (*Id.*)  Plaintiff's counsel's

invoices tell a different story.  According to the invoices, following the September 5, 2008

Opinion and Order and extending through April 25, 2010, when Plaintiff commenced work on its

23

Motion to Amend and proposed Verified Amended Complaint,[4] Plaintiff's counsel billed 330.25 hours.  Plaintiff's counsel expended an additional 158.5 hours though the August 24, 2010 filing of its Amended Verified Complaint.  In total, during the second stage of the litigation, Plaintiff's counsel expended a whopping 495.25 hours.  The Undersigned will now briefly review Plaintiff's counsel's expenditure of time as reflected in the invoices.

Following the September 5, 2008 Opinion and Order, Plaintiff's counsel expended 10.5 hours "review[ing] the specifics of [the] decision," consulting regarding the status, and preparing for a nonexistent permanent injunction hearing.  (Oct. 31, 2008 Invoice, ECF No. 94-1.)

In November 2008, Plaintiff's counsel expended another 17.5 hours.  Of these hours, Plaintiff's counsel expended 6.5 hours working on preliminary injunction and standing issues even though the Court had already issued the preliminary injunction resolving all pending issues, including standing, and Defendants had not thereafter raised standing as a defense.  In addition, three entries in November 2008, totaling 6.5 hours, bill for counsel's "First Amendment research" without further elaborating the purpose of the research.  (Dec. 11, 2008 Invoice, ECF No. 94-1.)

Similarly, in December 2008, Plaintiff's counsel expended 15 hours to consult and plan for an injunction hearing and issues related to the hearing even though the Court had already issued the preliminary injunction resolving all pending issues and had not thereafter scheduled a

---

[4]On February 4 and 15, 2010, there are entries reflecting that counsel expended 3 and 3.5 hours respectively to work on an amended complaint.  (Mar. 31, 2010 Invoice, ECF No. 94-1.) The next entry reflecting work on an amended complaint or a motion to amend is on April 25, 2010.  The 6.5 hours of time spent working on an amended complaint in February 2010 is excluded from the tally of 330.25 hours Plaintiff's expended while this case "lay fallow."  In total, between August 6, 2008 and April 25, 2010, Plaintiff's counsel expended 336.75 hours.

hearing. (Jan. 31, 2009 Invoice, ECF No. 94-1.) In January 2009, Mr. Todd billed 21.5 hours for researching non-existent standing issues and preparing for a nonexistent hearing. Plaintiff's counsel billed another 7 hours in January to "[r]esearch case law on disclosure issue" and "[r]esearch new First Amendment cases." (Feb. 28, 2009 Invoice, ECF No. 94-1.)

In February 2009, Plaintiff's counsel expended more than 20 hours of work relating to Defendants' requests for admissions. As set forth above, Defendants' requests sought Plaintiff's admission that it had not run its proposed ads and that the bill referenced in the proposed ad had expired when Ohio's General Assembly adjourned. (*See* Def.'s Reqs. for Admission, ECF No. 113-1.) In response to each question, Plaintiff copied the same boilerplate objection and case citations, prompting Defendants to seek Court involvement. On March 9, 2009, the Magistrate Judge ordered Plaintiff to respond to the requests for admission, concluding that the requests were relevant to Defendants' defense of mootness. (ECF No. 49.)

Plaintiff's counsel expended approximately 13 hours in March 2009 in connection with filing its Objections to the Magistrate Judge's Order. On January 20, 2010, the Court overruled Plaintiff's Objections and affirmed the Magistrate Judge's Order. (ECF No. 55.) In addition to the time expended on the discovery dispute that Plaintiff lost, Plaintiff's counsel expended more than 24 hours in March 2009 performing a number of other nondescript tasks, including meeting regarding litigation issues, reviewing the preliminary injunction order, reviewing and researching case law, consulting with the client, working on discovery requests, reviewing state statutes, researching background issues, reviewing the local and civil rules, and meeting regarding service and discovery issues. (Apr. 30, 2009 Invoice, ECF No. 94-1.) Finally, in March 2009, Plaintiff's counsel billed 4.5 hours to draft never-served interrogatories and a

25

nonexistent memorandum.

From April through June 2009, Plaintiff's counsel expended 45.5 hours.  Billing entries reflect that Plaintiff's counsel expended approximately half of this time on discovery-related issues and research regarding jurisdictional issues.  The remaining entries are relatively vague and include entries for researching issues, reviewing First Amendment case law, and researching issues regarding new theories for causes of action.  In July 2009, Plaintiff's counsel expended 15.5 hours reviewing the status of the case, reviewing the briefs in *Citizens United*, reviewing "new materials on First Amendment," and "work[ing] on new theories for relief."  (Aug. 31, 2009 Invoice, ECF No. 91-3.)

Plaintiff's counsel did not work on this case again until December 2009.  In December 2009, Plaintiff's counsel expended 8 hours, including 2.5 hours preparing for a nonexistent permanent injunction hearing; 3 hours for "review of law" and working on a final pre-trial statement even though no conference or trial was scheduled; and 2.5 hours to update and review the law, "especially *Citizens United*" even though nothing had happened in *Citizens United* during that period and Plaintiff's counsel had previously expended 10 hours reviewing the briefs filed in *Citizens United*.  (*See* July 31, 2009; Aug. 31, 2009; and Jan. 31, 2010 Invoices, ECF No. 94-1.)

In January 2010, Plaintiff's counsel expended a total of 21.75 hours, all related to reviewing and analyzing *Citizens United*.  In February 2010, Plaintiff's counsel expended an additional 7.5 hours reviewing and analyzing *Citizens United*, as well 9.5 hours working on "Ohio law issues," reviewing Ohio statutes, and analyzing First Amendment rights under Ohio law.  (Mar. 31, 2010 Invoice, ECF No. 94-1.)

26

On March 8, 2010, Defendants moved to dismiss the action for lack of subject matter jurisdiction on the grounds that there was no longer any live dispute between the parties because Plaintiff's Complaint only alleged facts relating to the fall 2008 election.  (ECF No. 56.)  Plaintiff's counsel expended 15.75 hours in March 2010 reviewing Defendants' Motion to Dismiss and researching and preparing their response.  Plaintiff's counsel also expended 2 hours preparing for a pretrial conference even though no conference was scheduled.  In April 2010, Plaintiff's counsel expended an additional 32.25 hours preparing Plaintiff's response to Defendants' Motion to Dismiss.

In addition to the 6.5 hours expended in February 2010 working on an amended complaint, Plaintiff's counsel expended 15 hours in April 2010 and 47.25 hours in May 2010 working on its Motion to Amend and proposed Amended Verified Complaint.  On May 18, 2010, Plaintiff filed its Motion to Amend, seeking to add a new claim based upon *Citizens United* and to allege its intent to run broadcast advertisements during the fall 2010 election.  (ECF No. 65.)  Plaintiff's counsel also expended 6 hours in May 2010 preparing for a nonexistent preliminary injunction hearing.[5]

Plaintiff's counsel billed for 35 hours in June 2010, including 6 hours expended on matters relating to its Motion to Amend and proposed amended complaint even though those documents had already been filed.  Plaintiff's counsel expended 17.5 hours in connection with its seven-page Reply in support of its Motion to Amend.  The remaining 11.5 hours were spent performing a number of other nondescript tasks, including "[c]onsult[ing] regarding status,"

---

[5]Indeed, Plaintiff did not even file its second Motion for a Preliminary Injunction until August 26, 2010.  (ECF No. 70.)

27

"review[ing] potential new lawsuit," and performing research.  (July 30, 2010 Invoice, ECF No. 94-1.)  After the parties' motions were fully briefed but before the Court's resolution, Plaintiff's counsel expended 18.5 hours in August 2010 to review the status of the case, review the status of federal law, perform research on preliminary relief hearings, and work on a motion for preliminary relief.

On August 16, 2010, in a two-page Order, the Court granted Plaintiff's Motion to Amend and denied Defendants' Motion to Dismiss as moot.  (ECF No. 68.)  In the Order, the Court noted that Plaintiff sought leave to amend its Complaint, in part, to correct any jurisdictional deficiencies relating to the original Complaint.  (*Id*. at 1–2.)  The Court granted Plaintiff leave to amend, explaining that, "[t]he amended complaint, while not as developed and detailed as the original complaint, sets forth facts that are pertinent to the upcoming [2010] election season and that arguably demonstrate a very real and ongoing dispute between the parties and a request for relief that is not retrospective."  (*Id*. at 2.)  The Court explained its decision not to review the merits of Defendants' Motion to Dismiss as follows: "Because Defendants' motion to dismiss on jurisdictional grounds (Doc. 56) does not address the additional facts in the amended complaint, which arguably cure any jurisdictional deficiency, it is **DENIED** as moot."  (*Id*.)

Thereafter, even though Plaintiff had completed and attached a copy of the Amended Verified Complaint to its May 18, 2010 Motion to Amend, three billing entries in August 2010 reflect that Plaintiff's counsel expended additional time to "begin drafting Amended Complaint," "[c]omplete work on Amended Complaint," "complete work for filing Amended Complaint," and

28

prepare and filing of Amended Complaint.[6]  (Sept. 20, 2010 Invoice, ECF No. 94-10.)

In total, Plaintiff's counsel expended 495.25 hours *after* obtaining relief with regards to its as-applied challenge to Ohio's blackout provisions for the 2008 election and before amending its Complaint to allege its intent to run ads during the 2010 election and to assert new claims based upon *Citizens United*.  In terms of success, Plaintiff successfully obtained leave to amend over Defendants' objections, which effectively mooted Defendants' Motion to Dismiss for lack of a ripe controversy.  The Undersigned cannot conclude, however, that the 495.25 hours expended during the second stage of the litigation was reasonable in relation to the success Plaintiff achieved.  Rather than allowing the case to "lay fallow" between the 2008 and 2010 election seasons and amending its complaint in 2010 to assert new claims arising from *Citizens United* and to allege its intent to run ads during the 2010 election season, Plaintiff could have dismissed the case following the 2008 election and filed a new action in 2010.  Indeed, Plaintiff's counsel's billing records reveal that counsel contemplated filing an entirely new action as an alternative to filing an amended complaint.  (*See* July 30, 2010 Invoice, ECF No. 94-1 (3.5-hour entry for June 18, 2010: "Consult regarding status; review potential new lawsuit to accelerate case").)

---

[6]The three entries total 16.75 hours, but the Court is unable to discern how much of this time Plaintiff's counsel expended working on the Amended Complaint because the entries are lumped with other entries.

### c.     The September 15, 2010 Consent Decree

In the third stage of the litigation, which involved the 2010 preliminary injunction, Plaintiff obtained some relief under the September 15, 2010 Consent Decree.  The Consent Decree reflected the parties' agreement that *Citizens United* precluded the State of Ohio from enforcing certain challenged statutory provisions to Plaintiff's intended conduct.

In its briefing on the subject Motion for Attorneys' Fees, Plaintiff describes the "clear impact" of *Citizens United* as follows: "The decision in *Citizens United* was straight forward and plainly applied to the provisions in Title 35 of the Revised Code that were designed to restrict the freedom of speech of corporations and labor organizations."  (Pl.'s Reply 3–4, ECF No. 91.) Plaintiff adds that "the facts in this case, as well as the claims for relief, were essentially similar to the *Citizens United* case . . . ."  (*Id.*)  In their first filing during the final stage of this litigation, Defendants acknowledged their agreement.  More specifically, in their Answer, filed two weeks after Plaintiff filed its Amended Verified Complaint, Defendants explicitly conceded that *Citizens United* precluded Ohio from enforcing some of the challenged statutes to Plaintiff's intended conduct.  (ECF No. 73.)  Defendants promptly began working with Plaintiff to negotiate a consent order reflecting the parties' agreement concerning the impact of *Citizens United*.  (*See* Joint Mot. to Extend Briefing Sched., ECF No. 74 (filed the day after Defs' Answer and seeking an extension of time to respond to Plaintiff's Motion for a Temporary Restraining Order so that the parties could continue to "jointly work[] on a consent order that may obviate the need to brief some of the legal issues raised in Plaintiff's motion").)  The parties entered into a Consent Decree a week later.  (ECF Nos. 77 and 79.)  In this final stage of the litigation, Plaintiff prevailed solely on the uncontested issues addressed in the Consent Decree.

In addition to the claims the Consent Decree resolved, Plaintiff pursued several unsuccessful claims, including its claims challenging Ohio's disclosure provisions, which were premised upon its construction of H.B.1. In Plaintiff's Notice of Outstanding Issues, it identified eight remaining issues requiring the Court's resolution. (ECF No. 78.) Thereafter, the parties briefed the issues Plaintiff identified. (ECF Nos. 81, 82, and 86.) In the course of this briefing, Plaintiff, for the first time, challenged the constitutionality of Ohio Revised Code § 3517.102, a provision regulating contributions between designated political entities. Plaintiff's unsuccessful claims, including the claim it belatedly raised, involved different sets of statutory provisions and shared no common legal theories with Plaintiff's successful claims. Plaintiff did not prevail on any of its remaining claims, all of which the Court ultimately dismissed with prejudice. (*See* Sept. 20, 2010 Opinion and Order, ECF No. 83; July 20, 2011 Order, ECF No. 103 (dismissing all remaining claims with prejudice).)

In total, during this final stage of the litigation, commencing *after* the August 24, 2010 filing of Plaintiff's Amended Verified Complaint, Plaintiff's counsel expended 81.5 hours. Of this time, it is clear that the 11.5 hours expended after entry of the Consent Decree is not related to the successful claims, but due to the vagueness of the billing entries and Plaintiff's counsel's practice of lumping the entries together, the Undersigned is unable to discern how many hours were expended on the claims the Consent Decree resolved. Presumably, though, of the hours expended, Plaintiff's counsel spent more time on the contested claims that they continued to pursue than the uncontested, straight-forward claims that the Consent Decree resolved shortly after Plaintiff filed its Amended Verified Complaint. Thus, the Undersigned concludes some reduction is warranted to reflect Plaintiff's limited success during this final stage of the

litigation.

> ### d. The Hours Expended on the Litigation as a Whole in Relation to the Success Achieved

In total, Plaintiff's counsel expended 780.75 hours on this litigation.  As more fully detailed above, in terms of success, in 2008, Plaintiff prevailed solely on its straight-forward, as-applied challenge to Ohio's blackout provisions, an uncontested claim modeled after the claims advanced in *WRTL* and a claim which neither party expended time briefing.  In 2010, Plaintiff persuaded the Court to permit it to amend its Complaint to add claims arising from the 2010 *Citizens United* decision and to allege its intent to run advertisements during the fall 2010 election.  Two weeks after Plaintiff filed its Amended Verified Complaint, Defendants, in their Answer, conceded that *Citizens United* precluded Ohio from enforcing some of the challenged statutes with regard to Plaintiff's intended conduct.  The Consent Decree, filed a week later, reflected the parties' agreement concerning the impact of *Citizens United*.  Plaintiff obtained no further relief in this litigation.

The Undersigned concludes that the foregoing limited success Plaintiff achieved in this litigation does not constitute a "satisfactory basis" for concluding that Plaintiff's counsel's enormous expenditure of time was "'reasonable in relation to the success achieved.'"  *Binta B.*, 710 F.3d at 639 (quoting *Hensley*, 461 U.S. at 436); *see also Granzeier v. Middleton*, 173 F.3d 568, 578 (6th Cir. 1999) (citing *Phelan v. Bell*, 8 F.3d 369 (6th Cir. 1993) ("[A]ttorney's fee awards are to be proportional to the prevailing party's degree of success.").  Review of Plaintiff's fee documentation makes clear that vast majority of the 780.75 hours expended were

unrelated to its pursuit of the successful claims.[7]  It is impossible, however, to ascertain the number of hours Plaintiff's counsel expended on the successful claims due to counsel's practice of lumping billing entries and utilizing vague descriptions.

The Undersigned's recommendation that the Court apply a ninety-percent reduction to the hours requested is not premised upon the consideration of Plaintiff's limited success alone. Rather, this recommendation is equally attributable the Undersigned's finding that Plaintiff's counsel failed to properly exercise billing judgment and adequately document time expended as more fully explained below.

### 2.      Lack of Billing Judgment

It is well settled that only fees reasonably expended on the litigation are compensable under Section 1988.  *Binta B.*, 710 F.3d at 628.  Thus, a "party applying for an award of fees should 'exercise "billing judgment" with respect to the hours worked.'"  *Imwalle*, 515 F.3d at 552 (quoting *Henlsey*, 461 U.S. at 437.)  "This means that '[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . .'"  *Binta B.*, 710 F.3d at 628 (quoting *Hensley*, 461 U.S. at 434).  In addition, a fee applicant "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims."  *Hensley*, 461 U.S. at 437.

As discussed above, across-the-board reductions to account for a demonstrated lack of billing judgment or insufficient documentation are appropriate.  *See, e.g.*, *Bell v. Prefix, Inc.*, 784

---

[7]Plaintiff's contention that many of the hours it was required to expend are attributable to Defendants' "recalcitrance" and "unclean hands," (Pl.'s Reply 4–5, ECF No. 91), is simply not supported by the case history, which demonstrates that Defendants promptly conceded the merits of every claim upon which Plaintiff prevailed.

F.Supp.2d 778, 790 (E.D. Mich. 2011) (applying an eighty-percent reduction to fees requested because "the excessive billing is so egregious" and also noting that the 80% reduction was likely "generous"), *aff'd*, 2013 WL 323005 (6th Cir. Jan. 29, 2013); *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999) (affirming the trial court's across-the-board reduction in fees where the applicant's fee documentation did "not permit a reviewing court to identify distinct claims and the issues addressed, assess the necessity for multiple counsel, and distinguish between redundant, unnecessary, and duplicated work effort versus the proper utilization of time") (internal quotation marks and citation omitted); *Sierra Club v. Mullen*, 619 F.Supp 1244, 1252 (D.D.C. 1985) (applying an eighty-percent reduction to account for "duplication of efforts and insufficient documentation of time expended").

In the instant case, review of Plaintiff's fee documentation reveals a pattern of undetailed billing, excessive billing, and inappropriate billing for that tasks that were unnecessary or not otherwise billable.  Although Plaintiff's fee petition is replete with occurrences of insufficient billing descriptions, excessive billing, and inappropriately billed time, rather than expend the judicial resources to perform a line-by-line review, the Undersigned will now highlight a few exemplary entries.

### a.    Insufficient Billing Descriptions

The "key requirement for an award of attorney fees is that '[t]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation.'"  *Imwalle*, 515 F.3d at 553 (quoting *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984)).  As the

fee applicant, Plaintiff bears "the burden of supplying the [Court] with adequate documentation." *Black v. Lojac Enters.*, No. 96-5654, 1997 WL 377051, at *3 (6th Cir. 1997) (citing *Hensley*, 461 U.S. at 437). *Libertarian Party of Ohio*, 2007 WL 4171630 at *3 ("Sufficient detail matters . . . .").

Plaintiff's counsel's documentation is inadequate in two regards. First, Plaintiff's counsel often lumped entries together such that the Undersigned is unable to determine how much time was spent on a particular task or in pursuit of a particular claim. For example, Mr. Todd's March 9, 2009 entry for 6 hours reads as follows: "Conference call regarding discovery with Magistrate [Judge] King; research and consult with client; work on discovery to defendants; research new case law; review Citizens United briefs." (Apr. 30, 2009 Invoice, ECF No. 94-1.) The paralegals working on this case also routinely lumped their entries together. For example, LSL's March 23, 2009 entry for 1 hour reads as follows: "Brief conference with L. Brown; prepare subpoenas for service; telephone conferences with process server; attention to service issues and returns of servce." (*Id.*) The Court is therefore unable to evaluate whether the billed time was reasonably expended. On this ground alone, a reduction of fees is appropriate. *See, e.g., Saint-Gobain,* 707 F.Supp.2d at 763 (applying a 20% across-the-board reduction for insufficient documentation and observing that "the Court cannot begin to evaluate the reasonableness of any individual entry" where the "summaries fail to set forth the amount of time each attorney spent on any given task") (citations omitted); *Cleveland Area Bd. of Realtors,* 965 F.Supp. at 1021 (applying an across-the-board reduction in the fees requested for insufficient documentation where counsel had lumped tasks together in a single entry leaving the court "unable to determine the reasonableness of many of the hours expended"); *Crim,* 2013 WL

35

1063476 at *9 (concluding that a 50% across-the-board reduction in the hours claimed would be appropriate where the counsel included multiple activities in a single time entry and "where the total hours is exceptionally high and most entries reflect multiple activities").

Second, and more problematic, Plaintiff's counsel routinely utilized vague descriptions such that the Undersigned is unable to discern the purpose of counsel's efforts or "determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle*, 515 F.3d at 553 (internal quotation marks and citation omitted). Exemplary vague entries from counsel's first invoice relating to research include: "Review constitutional issues," 2 hours (4/9/08); "Continue research on Constitutional issues" 2.25 hours (4/17/08); "continued research on issues" 5 hours (4/18/08); "Review case law" 6.25 hours (5/2/08); "Research background of First Amendment law issues" 5 hours (5/8/08); "Review pleadings and new case law" 2.5 hours (5/28/08). (June 30, 2008 Invoice, ECF No. 94-1.) Similar vague entries relating to research appear on nearly every invoice. In fact, over the course of the litigation, there are more than forty such entries totaling nearly 175 hours. In addition, there are more than 20 nondescript entries, exceeding 50 hours, billing for consultation, reviewing of the status of the case, or reviewing the file. By way of example, Plaintiff's counsel's October 2008 invoice included the following billing entries: "Review file regarding status of PI status" 1 hour (8/18/08); "Review file" 1.25 hours (8/21/08); "Consultation regarding status of litigation; review file and new case law" 2 hours (9/2/08); "Consultation regarding next steps with clients" 2 hours (9/8/08); "Continued Review of Options" 3 hours (9/9/08); "Client conference call regarding status and further steps" 2.5 (9/17/08); and "Consultation regarding status of the case" .5 hours (9/24/08). (Oct. 31, 2008 Invoice, ECF No. 94-1.) Counsel's

36

numerous entries relating to its discovery efforts, which exceed 100 hours, are likewise vague such that the Undersigned is unable to discern whether the expenditure of time was reasonable. (*See, e.g.*, Jan. 31, 2009 Invoice: "Work on Discovery" 4 hours (12/1/08); "Attention to discovery" 5 hours (12/11/08).)  The Undersigned emphasizes that these entries are exemplary entries and by no means constitute an exhaustive list of Plaintiff's counsel's vague billing descriptions.

Courts have routinely excised these types of vague, nondescript billing entries from fee petitions.  *See, e.g.*, *Women's Med. Prof. Corp.*, 2003 WL 23777732 at *4 (excluding vague billing entries from the fee award, explaining that  "[s]tatements such as 'Review background information and issues' and 'General Issues-trial prep' are too broad and unspecific to enable this Court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation.") (internal footnotes, quotation marks, and citations omitted); *Black*, 1997 WL 377051 at *3 (affirming trial court's deduction of vague entries, explaining that, "entries fail[ing] to even identify the general subject matter involved, documented with such vague descriptions as 'research,' 'pick-up,' 'revised form,' and 'office conference' . . . clearly provide little guidance in ascertaining the purpose of the work during the time claimed and do not merit an award"); *Bell*, 784 F.Supp.2d at 787 (finding entry for "trial preparation" too vague to ascertain what the attorney was doing).

### b. Excessive and Unnecessary Hours

Even though the majority of Plaintiff's counsel's billing records are inadequate to permit meaningful analysis of the reasonableness of the time expended, it is nonetheless apparent that counsel excessively billed for nearly every task performed.

For example, Plaintiff's counsel expended 118.25 researching, drafting, and filing its seventeen-page Verified Complaint.  This expenditure of time is excessive in view of the issues involved and counsel's high level of experience and expertise.  Per Mr. Todd's affidavit, he has nearly thirty-five years of experience as an attorney and "a high level of experience and background in campaign finance and election law" with "significant counseling and litigation experience representing clients who engage in independent expenditure campaigns, such as those represented by the issues involved in this case."  (Todd Aff. ¶ 8, ECF No. 85-1.)  Moreover, Plaintiff's counsel has acknowledged that the issues involved were not terribly complex.[8] Further, of the seventeen-page Verified Complaint, one entire page is devoted to the case caption and another two pages to block quoting statutes.

Other glaring examples include Plaintiff's counsel's gross expenditure of time in connection with its Motion to Amend and the preparation of its Amended Verified Complaint. During the second stage of the litigation, after expending more than 55 hours reviewing and analyzing *Citizens United*;[9] more than 100 hours performing research on various issues (mostly

---

[8]*See* Pl.'s Mot to Advance a Trial 3, ECF No. 71 ("Defendants cannot claim that the issue of the constitutionality of the campaign finance laws involved in this case is a set of issues known only to a few practitioners of an ancient and obscure area of practice."); Pl.'s Mot. for Atty. Fees 3–5, ECF No. 85 (acknowledging that the fact pattern and issues presented in the instant action mirrored the facts and issues presented in *WRTL* in the first stage of litigation and *Citizens United* in the second stage); Pl.'s Reply 2–3, ECF No. 91 ("[T]he *WRTL* analysis should have been relatively straight-forward to apply to the offending provisions in Title 35 of the Revised Code, [and] [t]he decision in *Citizens United* was straight forward and plainly applied to the provisions in Title 35 of the Revised Code that were designed to restrict the freedom of speech of corporations and labor organizations.").

[9]*See* billing entries dated 3/9/09, 6/8/09, 7/28/09, 7/29/09, 7/30/09, 12/30/09, 1/4/10, 1/5/10, 1/21/10, 1/22/10, 1/27/10, 1/29/10, 2/1/10, 2/9/10, 2/18/10, 2/24/10, and 4/14/10, ECF No. 94-1.)

unidentified); more than 56 hours drafting its Memorandum in Opposition to Defendants'
Motion to Dismiss; and 6.5 hours working on "new theories for causes of action,"[10] Plaintiff's
counsel expended 33.75 hours in connection with drafting its Amended Verified Complaint and
an additional 26.5 hours working on its Motion to Amend. This is particularly egregious
because of Plaintiff's ten-page Motion to Amend, less than one page constitutes new material;
Plaintiff's counsel copied, word-for-word, ten pages of text from Plaintiff's Memorandum in
Opposition to Defendants' Motion to Dismiss, a document for which Plaintiff's counsel had
billed 56 hours. (*Compare* Pl.'s Mem. in Opp to Pl.'s Mot to Dis. 3–11, ECF No. 63 *with* Pl.'s
Mot. to Am. 2–10, ECF No. 65.) The ten copied pages consist of an iteration of the procedural
history of the action and the impact of *Citizens United*. Aside from setting forth the standard for
amending a complaint, the entirety of the new material in the Motion to Amend for which
counsel billed 26.5 hours to draft reads as follows:

> ORTL's proposed Amended Verified Complaint is attached hereto as Exhibit
> A. Essentially, the Amended Verified Complaint preserves and restates the original
> factual and legal allegations in the Complaint. However, the Amended Verified
> Complaint clarifies that ORTL remains a "corporate form," advocacy organization
> in Ohio that desires to express its political views during 2010 and beyond. In its
> recent Motion to Dismiss, Defendants argued, in part, that ORTL was not seeking
> "prospective relief" in this case. The additional facts in the proposed Amended
> Verified Complaint clarify that ORTL is seeking relief from these unconstitutional
> provisions of Ohio law for 2010, and into the future.

> Similarly, the Amended Verified Complaint clarifies that the legal standard
> applicable to this case is the recently announced standard in *Citizens United v. FEC*,
> 558 U.S. ___ (2010). Consequently, the constitutionality of the involved Ohio
> statutes now must be viewed through the prism of *Citizens United*.

> Finally, ORTL clarifies in its Amended Verified Complaint that the relief it
> seeks is declaratory and permanent injunctive relief, determining that the provisions

---

[10]*See* billing entries dated 6/16/09 and 7/31/09, ECF No. 94-1.

in Title 35 of the Ohio Revised Code that unconstitutionally burden ORTL's right
to exercise political speech are facially unconstitutional.

(Pl.'s Mot. to Am. 10–11, ECF No. 65.)  It is beyond dispute that the 26.5 hours Plaintiff's
experienced litigation counsel billed to draft these three paragraphs and the standard for
amending a complaint is wholly unreasonable.

The 33.75 hours Plaintiff's counsel billed to draft the fifteen-page Amended Verified
Complaint is equally unreasonable.  As Plaintiff's counsel correctly observed in the excerpt from
the Motion to Amend copied above, much of Plaintiff's Amended Verified Complaint "preserves
and restates the original and factual and legal allegations in the Complaint" such that most of the
paragraphs remain unchanged.  (*Id*. at 10.)  The changes include edits to reflect the impact of
*Citizens United* and to reflect its intent to run ads during the 2010 election cycle.  Given that
Plaintiff's counsel had already billed more than 55 hours for reviewing and analyzing *Citizens
United* and numerous hours to brief the impact of *Citizens United* in its Memorandum in
Opposition to Plaintiff's Motion to Dismiss, 33.75 hours to make these edits to the original
Verified Complaint is insupportable.

Plaintiff's counsel also unreasonably expended time researching issues that had already
been resolved, working on documents that had been already been filed, working on documents
that were never filed or served, and preparing for nonexistent hearings.  By way of example,
Plaintiff's counsel expended nearly 30 hours preparing for nonexistent hearings.  (*See* billing
entries dated:  9/9/08, 11/25/08, 12/1/08, 12/3/08, 12/15/08, 1/27/09, 12/23/09, 12/29/09,
5/28/10, 8/5/10, and 8/9/10, ECF No. 94-1.)  In addition, Plaintiff's counsel expended nearly 50
researching and considering preliminary injunction issues, including standing, *after* the Court
had already resolved those issues in the September 5, 2008 Opinion and Order.  (*See* billing

40

entries dated: 11/12/08, 11/21/08, 11/25/08, 12/11/08, 1/6/09, 1/14/09, 1/15/09, 1/26/09, 1/27/09, 1/28/09, ECF No. 91-4.)  Similarly, as noted above, three billing entries reflect that Plaintiff's counsel continued to expend several hours preparing the Amended Verified Complaint even though the Amended Verified Complaint had been previously completed and attached to Plaintiff's May 18, 2010 Motion to Amend.  (*See* Sept. 20, 2010 Invoice, ECF No. 94-10.)

Yet another example involves Plaintiff's counsel's expenditure of approximately 75 hours in connection with Plaintiff's refusal to respond to Defendants' simple requests for admissions.   The Undersigned again emphasizes the foregoing occurrences of excessive and/or unwarranted expenditures of time are illustrative and by no means an exhaustive listing.

### c.   Inappropriately Billed Time

Review of Plaintiff's fee documentation also reveals that Plaintiff's counsel failed to exercise billing judgment to excise entries reflecting work that is not properly billed or that is not compensable under § 1988.  For example, in May 2008, *after* an entry reflecting that Plaintiff's counsel had completed the final draft of the Complaint, the invoices reflect an expenditure of 11 hours of attorney time for media planning and the filing of the Complaint:

- 5/16/2008, 2.5 hours: "Work on logistics to file Complaint; media planning, etc"

- 5/19/2008, 4.5 hours: "Complete work on litigation filing; consult regarding press release, etc"

- 5/20/2008, 4.0 hours: "Filing of Complaint; miscellaneous attended matters"

(June 30, 2008 Invoice, ECF No. 94-1.)  In addition, the invoices reflect an additional 6.25 hours of paralegal time on May 19 and 20, 2008, for "[p]reparation of case for filing," preparing summons and cover sheet, "attention to filing and service issues," and "[a]ttention to filing and

41

service issues." (*Id.*) Almost none of the time expended in connection with the preparation of summons and cover sheet and filing is compensable paralegal time, let alone compensable attorney time. *See, e.g.*, *Crim*, 2013 WL 1063476 at *8 ("time spent for ministerial tasks such as preparing a summons form . . . or filing should not have been charged"); *Armstrong*, 2012 WL 404893, at *3–4 (noting that "[f]iling documents with the Court and mailing documents are not activities sufficiently complex to require the professional training of a paralegal" and reducing paralegal time allowable to .1 hours for entry reflecting time expended to prepare summons, civil cover sheet, initiate documents, and file complaint and striking all attorney time billed for filing); *Auto Alliance Intern.,* 155 F. App'x at 228 ("The billing records reflect that the vast majority of the paralegal work consisted of picking up and indexing documents. This is nonrecoverable clerical work, as contrasted with paralegal work that would be otherwise have to be done by an attorney."). The media time is likewise not compensable. *Gunasekera v. Irwin*, 774 F.Supp.2d 882, 890–91 (S.D. Ohio 2011) (collecting cases establishing that time spent on media relations is not compensable under § 1988).

## C.  Reasonableness of the Costs and Expenses Requested

Plaintiff seeks reimbursement of $2651.53 for costs and expenses. Defendants challenge the sufficiency of the documentation Plaintiff supplies in support of the expenses it seeks. The Court agrees that Plaintiff has failed to sufficiently document nearly all of the expenses it seeks to recover.

"Section 1988 permits district courts to award those incidental and necessary expenses incurred in furnishing effective and competent representation as part of the award of attorney fees." *Waldo*, 726 F.3d at 828 (internal quotation marks and citations omitted). Recoverable

expenses include "those incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services, such as reasonable photocopying, paralegal expenses, and travel and telephone costs." (*Id.*)  A party seeking expenses must demonstrate the reasonableness of those charges such that the Court is able to confirm the necessity of and basis for the charges.  *See Auto Alliance Intern.,* 155 F. App'x at 229; *Bell,* 784 F.Supp.2d at 782.  For example, in *Auto Alliance International*, the Sixth Circuit affirmed the trial court's disallowance of costs for electronic legal research where the fee applicant had failed to submit any evidence or argument that might support an allowance of these expenses.[11]  155 F. App'x at 229.  The Court further explained that the fee applicant's affidavit failed to establish how the amount was calculated, the precise basis for the charge, and how the charges were reasonably related to the issues raised in the litigation.  *Id.*  The trial court in *Bell v. Prefix* similarly declined to award the fee applicant a monetary sum for copying costs where the applicant's invoices "fail[ed] to specify the number of copies expended or describe the necessity of obtaining such copies."  784 F.Supp.2d at 792, *aff'd*, 2013 WL 323005 (6th Cir. Jan. 29, 2013).  The *Bell* Court concluded that $.10 per copy is a reasonable rate and ordered the defendant to pay the copying costs upon receipt of "a detailed bill for necessary copying costs."  (*Id.*)

Here, with the exception of a single entry, Plaintiff's documentation relating to its costs is woefully inadequate.  The Undersigned recommends that the Court award Plaintiff $350, a cost supported by an entry on the June 30, 2008 Invoice for "Filing Fees."  (ECF No. 94-1.)  It appears that the September 2010 $350 entry is a duplicate entry and should be rejected on that

---

[11]The Court also recognized that courts have disputed whether computer research expenses are recoverable, but declined to reach the merits of that dispute given the insufficient documentation.  *Id.*

43

ground. The Undersigned is unable to discern why there is a $160 charge for "Medical Records" in an election-law action and therefore recommends that this charge be excised as well. Although Plaintiff would be able to recover fees paid to court reporters for transcripts, *see Tinch v. City of Dayton*, 199 F.Supp.2d 758, 768–69 (S.D. Ohio 2002), the Undersigned recommends excising these expenses because no depositions took place during that time and there is no evidence substantiating that these costs were actually paid to third parties. The remainder of the entries, like the entries at issue in *Auto Alliance International* and *Bell*, are too vague to support an award. This includes multiple entries for "Computer Research," "Delivery Fee," and "Document Reproduction." (*See* ECF No. 94-1.) The Undersigned therefore recommends denial of these requested expenses. Alternatively, the Court could follow the *Bell* Court's lead and order payment of copying costs should Plaintiff tender a detailed bill demonstrating the number of and necessity for the copies.

**D.    Summary of the Recommended Adjustments**

Because Plaintiff is the prevailing party, it is entitled to reasonable attorneys' fees pursuant to 42 U.S.C. § 1988. The Undersigned recommends, however, that the Court make adjustments to both multipliers of the lodestar computation.

The Undersigned makes the following recommendations regarding the reasonableness of Plaintiff's counsel's proposed hourly rates:

- It is recommended that the Court conclude that $250 per hour was the prevailing market rate within this jurisdiction during the relevant time frame for experienced attorneys litigating election-law actions.

- It is recommended that the Court conclude that the individual identified as LBB is an attorney and that $250 per hour was the prevailing market rate for LBB.

- It is recommended that the Court conclude that the individuals with the initials

44

KH, LSL, an KJ are paralegals and that in the absence of any documentation revealing the paralegals' level of experience or otherwise supporting the reasonableness of their rates, the Court find that $75 per hour was a reasonable rate within this jurisdiction during the relevant time period.

• That the Court strike the entries totaling 1.5 hours for an an individual with the initials LP because the entries relate to an "audit response memo," (*See* Aug. 31, 2009 Invoice, ECF No. 91-3), and it is unclear how this time is related to this litigation.

Turning to the second multiplier, the hours reasonably expended, the Undersigned recommends that the Court apply a 90% across-the-board reduction to the number of hours Plaintiff requests.  The Undersigned has endeavored to explain the myriad of reasons supporting this recommendation.  In summary, the Undersigned's recommendation is premised upon the following findings:  (1) the total hours expended are not reasonable in light of the partial success Plaintiff achieved, and Plaintiff's counsel's practice of lumping entries together and vague entries makes it impractical for the court to ascertain how many hours Plaintiff's counsel reasonably expended prosecuting the claims upon which it succeeded; (2) Plaintiff's fee petition is replete with entries demonstrating that Plaintiff's counsel failed to properly exercise billing judgment to excise unnecessary, excessive, and inappropriately billed hours from its fee petition; and (3) Plaintiff's counsel failed to adequately document time expended.

With regard to expenses, the Undersigned recommends that the Court allow the $350 Plaintiff incurred in connection with the filing of this action and deny the remaining costs as insufficiently documented.  Alternatively, it is recommended that the Court order payment of copying costs upon Plaintiff's counsel's submission of a detailed bill demonstrating the number of and necessity for the copies.

Applying these recommendations under the lodestar method of computation equates to

$19,170.62 in fees. This amount reflects the recommended ninety-percent reduction in the hours expended for a recalculated total of 76.15 hours of attorney time and 1.775 hours of paralegal time multiplied by the hourly rates of $250 and $75 per hour respectively. Adding the recommended allowance of $350 in expenses brings the total recommended award under § 1988 to $19,520.62.

The Undersigned concludes that the resultant sum will "do rough justice," adequately compensate Plaintiff's counsel for their efforts expended in this litigation, and encourage attorneys to undertake similar representation. *See Fox*, 131 S.Ct. at 2216 ("The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.") It also avoids the substantial windfall that would occur if the Court awarded attorneys' fees and expenses in excess of $350,000.

## IV. DISPOSITION

For the reasons set forth above, Defendants' request that the Court disregard Plaintiff's Supplemental Memorandum is **GRANTED**. (ECF No. 109.) It is further **RECOMMENDED** that Plaintiff's Motion for Attorneys' Fees and Costs be **GRANTED**, but with a reduction to the total attorneys' fees and expenses awarded as detailed above. (ECF No. 85.)

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy.

Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**


Date: October 22, 2013                    _____ /s/ *Elizabeth A. Preston Deavers* _____
                                          Elizabeth A. Preston Deavers
                                          United States Magistrate Judge